# BRADFIELD *v.* ROBERTS.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 76. Argued October 27, 1899. — Decided December 4, 1899.

The Providence Hospital of the city of Washington was incorporated by the act of Congress of August 7, 1864, c. 50, 13 Stat. 43, which gave to it "full power and all the rights of opening and keeping a hospital in the city of Washington for the care of such sick and invalid persons as may place themselves under the treatment and care of the said corporation." By the act of March 3, 1897, c. 387, 29 Stat. 665, making appropriations for the District of Columbia, an appropriation of $30,000 was made for two isolating buildings, to be constructed in the discretion of the Commissioners of the District, on the grounds of two hospitals, and to be operated as a part of such hospitals. Under that authority the Commissioners made an agreement with the Providence Hospital, which was a private hospital, in charge of sisters of the Roman Catholic Church, for the construction of an isolating building or ward on the hospital grounds, and for the receipt therein of poor patients sent there by the Commissioners, and for payments by the District on that account to the hospital. *Held*, that the agreement was one which it was within the power of the Commissioners to make; and that it did not conflict with the provision in Article I of the Amendments to the Constitution that "Congress shall make no law respecting an establishment of religion."

THIS was a suit in equity, brought by the appellant to enjoin the defendant from paying any moneys to the directors of Providence Hospital in the city of Washington, under an agreement entered into between the Commissioners of the District of Columbia and the directors of the hospital, by virtue of the authority of an act of Congress, because of the alleged invalidity of the agreement for the reasons stated in the bill of complaint. In that bill complainant represents that he is a citizen and taxpayer of the United States and a resident of the District of Columbia, that the defendant is the Treasurer of the United States, and the object of the suit is to enjoin him from paying to or on account of Providence Hospital, in the city of Washington, District of Columbia, any moneys belonging to the United States, by virtue of a contract between the Surgeon General of the Army and the directors of that hospital, or by virtue of an agreement between the Commissioners of the District of Columbia and such directors, under the authority of an appropriation contained in the sundry civil appropriation bill for the District of Columbia, approved June 4, 1897.

Complainant further alleged in his bill:

"That the said Providence Hospital is a private eleemosynary corporation, and that to the best of the complainant's knowledge and belief it is composed of members of a monastic order or sisterhood of the Roman Catholic Church, and is conducted under the auspices of said church; that the title to its property is vested in the 'Sisters of Charity of Emmitsburg, Maryland;' that it was incorporated by a special act of Congress approved April 8, 1864, whereby, in addition to the usual powers of bodies corporate and politic, it was invested specially with 'full power and all the rights of opening and keeping a hospital in the city of Washington for the care of such sick and invalid persons as may place themselves under the treatment and care of said corporation.'

"That in view of the sectarian character of said Providence Hospital and the specific and limited object of its creation, the said contract between the same and the Surgeon General of the Army and also the said agreement between the same and

the Commissioners of the District of Columbia are unauthorized by law, and, moreover, involve a principle and a precedent for the appropriation of the funds of the United States for the use and support of religious societies, contrary to the article of the Constitution which declares that Congress shall make no law respecting a religious establishment, and also a precedent for giving to religious societies a legal agency in carrying into effect a public and civil duty which would, if once established, speedily obliterate the essential distinction between civil and religious functions.

"That the complainant and all other citizens and taxpayers of the United States are injured by reason of the said contract and the said agreement, in virtue whereof the public funds are being used and pledged for the advancement and support of a private and sectarian corporation, and that they will suffer irreparable damage if the same are allowed to be carried into full effect by means of payments made through or by the said defendant out of the Treasury of the United States, contrary to the Constitution and declared policy of the Government."

The agreement above mentioned, between the Commissioners of the District of Columbia and the directors of Providence Hospital, is annexed to the bill, and is as follows :

"Articles of agreement entered into this sixteenth day of August, in the year of our Lord one thousand eight hundred and ninety-seven, by and between the Commissioners of the District of Columbia and the directors of Providence Hospital, a body corporate in said District, whereby it is agreed on the part of the Commissioners of the District of Columbia —

"That they will erect on the grounds of said hospital an isolating building or ward for the treatment of minor contagious diseases, said building or ward to be erected without expense to said hospital, except such as it may elect, but to be paid out of an appropriation for that purpose contained in the District appropriation bill approved March 3, 1897, on plans to be furnished by the said Commissioners, and approved by the health officer of the District of Columbia, and that when the said building or ward is fully completed it shall be turned

over to the officers of Providence Hospital, subject to the following provisions:

"First. That two thirds of the entire capacity of said isolating building or ward shall be reserved for the use of such poor patients as shall be sent there by the Commissioners of the District from time to time through the proper officers. For each such patient said Commissioners and their successors in office are to pay at the rate of two hundred and fifty dollars ($250) per annum, for such a time as such patient may be in the hospital, subject to annual appropriations by Congress.

"Second. That persons able to pay for treatment may make such arrangements for entering the said building or ward as shall be determined by those in charge thereof, and such persons will pay the said Providence Hospital reasonable compensation for such treatment, to be fixed by the hospital authorities, but such persons shall have the privilege of selecting their own physicians and nurses, and in case physicians and nurses are selected other than those assigned by the hospital, it shall be at the expense of the patient making the request.

"And said Providence Hospital agrees to always maintain a neutral zone of forty (40) feet around said isolating building or ward and grounds connected therewith to which patients of said ward have access.

"As witness the signatures and seals of John W. Ross, John B. Wight and Edward Burr, acting Commissioners of the District of Columbia, and the corporate seal of the said The Directors of Providence Hospital and the signature of president thereof, this sixteenth day of August, A.D. 1897."

The contract, if any, between the directors and the Surgeon General of the Army is not set forth in the bill, and the contents or conditions thereof do not in any way appear.

The defendant demurred to the bill on the ground that the complainant had not in and by his bill shown any right or title to maintain the same; also upon the further ground that the complainant had not stated such a case as entitled him to the relief thereby prayed or any relief as against the defendant.

Complainant joined issue upon the demurrer, and at a term of the Supreme Court of the District of Columbia the demurrer was overruled and the injunction granted as prayed for. 26 Wash. Law Rep. 84. Upon appeal to the Court of Appeals of the District the judgment was reversed, and the case remanded to the Supreme Court, with directions to dismiss the bill. 12 App. D. C. 453. Whereupon the complainant appealed to this court.

*Mr. Joseph Bradfield*, appellant, in person for appellant.

*Mr. Assistant Attorney General Hoyt* for appellee. *Mr. Attorney General* was on his brief.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

Passing the various objections made to the maintenance of this suit on account of an alleged defect of parties, and also in regard to the character in which the complainant sues, merely that of a citizen and taxpayer of the United States and a resident of the District of Columbia, we come to the main question as to the validity of the agreement between the Commissioners of the District and the directors of the hospital, founded upon the appropriation contained in the act of Congress, the contention being that the agreement if carried out would result in an appropriation by Congress of money to a religious society, thereby violating the constitutional provision which forbids Congress from passing any law respecting an establishment of religion. Art. I of the Amendments to Constitution.

The appropriation is to be found in the general appropriation act for the government of the District of Columbia, approved March 3, 1897, c. 387, 29 Stat. 665, 679. It reads: "For two isolating buildings, to be constructed, in the discretion of the Commissioners of the District of Columbia, on the grounds of two hospitals, and to be operated as a part of such hospitals, thirty thousand dollars." Acting under the

authority of this appropriation the Commissioners entered into the agreement in question.

As the bill alleges that Providence Hospital was incorporated by an act of Congress, approved April 8, 1864, c. 50, 13 Stat. 43, and assumes to give some of its provisions, the act thus referred to is substantially made a part of the bill, and it is therefore set forth in the margin.[1]

The act shows that the individuals named therein and their successors in office were incorporated under the name of "The Directors of Providence Hospital," with power to

---

[1] An Act to incorporate Providence Hospital of the City of Washington, District of Columbia.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Lucy Gwynn, Teresa Angela Costello, Sarah McDonald, Mary E. Spalding and Mary Carroll, and their successors in office, are hereby made, declared and constituted a corporation and body politic, in law and in fact, under the name and style of the directors of Providence Hospital, and by that name they shall be and are hereby made capable in law to sue and be sued, to plead and be impleaded, in any court within the county of Washington, in the District of Columbia; to have and use a common seal, and to alter or amend the same at pleasure; to have, purchase, receive, possess and enjoy any estate in lands, tenements, annuities, goods, chattels,' moneys or effects, and to grant, devise or dispose of the same in such manner as they may deem most for the interest of the hospital: *Provided,* That the real estate held by said corporation shall not exceed in value the sum of one hundred and fifty thousand dollars.

SEC. 2. *And be it further enacted,* That the said corporation and body politic shall have full power to appoint from their own body a president and such other officers as they may deem necessary for the purposes of their creation; and in case of the death, resignation or refusal to serve, of any of their number, the remaining members shall elect and appoint other persons in lieu of those whose places may have been vacated; and the said corporation shall have full power and all the rights of opening and keeping a hospital in the city of Washington for the care of such sick and invalid persons as may place themselves under the treatment and care of the said corporation.

SEC. 3. *And be it further enacted,* That the said corporation shall also have and enjoy full power and authority to make such by-laws, rules and regulations, as may be necessary for the general accomplishment of the objects of said hospital: *Provided,* That they be not inconsistent with the laws in force in the District of Columbia: *And provided, further,* That this act shall be liable to be amended, altered or repealed, at the pleasure of Congress.

receive, hold and convey personal and real property, as provided in its first section. By the second section the corporation was granted "full power and all the rights of opening and keeping a hospital in the city of Washington for the care of such sick and invalid persons as may place themselves under the treatment and care of the said corporation." The third section gave it full power to make such by-laws, rules and regulations that might be necessary for the general accomplishment of the objects of the hospital, not inconsistent with the laws in force in the District of Columbia. Nothing is said about religion or about the religious faith of the incorporators of this institution in the act of incorporation. It is simply the ordinary case of the incorporation of a hospital for the purposes for which such an institution is generally conducted. It is claimed that the allegation in the complainant's bill, that the said "Providence Hospital is a private eleemosynary corporation, and that to the best of complainant's knowledge and belief it is composed of members of a monastic order or sisterhood of the Roman Catholic Church, and is conducted under the auspices of said church; that the title to its property is vested in the Sisters of Charity of Emmitsburg, Maryland," renders the agreement void for the reason therein stated, which is that Congress has no power to make "a law respecting a religious establishment," a phrase which is not synonymous with that used in the Constitution, which prohibits the passage of a law "respecting an establishment of religion."

If we were to assume, for the purpose of this question only, that under this appropriation an agreement with a religious corporation of the tenor of this agreement would be invalid, as resulting indirectly in the passage of an act respecting an establishment of religion, we are unable to see that the complainant in his bill shows that the corporation is of the kind described, but on the contrary he has clearly shown that it is not.

The above-mentioned allegations in the complainant's bill do not change the legal character of the corporation or render it on that account a religious or sectarian body. Assuming

that the hospital is a private eleemosynary corporation, the fact that its members, according to the belief of the complainant, are members of a monastic order or sisterhood of the Roman Catholic Church, and the further fact that the hospital is conducted under the auspices of said church, are wholly immaterial, as is also the allegation regarding the title to its property. The statute provides as to its property and makes no provision for its being held by any one other than itself. The facts above stated do not in the least change the legal character of the hospital, or make a religious corporation out of a purely secular one as constituted by the law of its being. Whether the individuals who compose the corporation under its charter happen to be all Roman Catholics, or all Methodists, or Presbyterians, or Unitarians, or members of any other religious organization, or of no organization at all, is of not the slightest consequence with reference to the law of its incorporation, nor can the individual beliefs upon religious matters of the various incorporators be inquired into. Nor is it material that the hospital may be conducted under the auspices of the Roman Catholic Church. To be conducted under the auspices is to be conducted under the influence or patronage of that church. The meaning of the allegation is that the church exercises great and perhaps controlling influence over the management of the hospital. It must, however, be managed pursuant to the law of its being. That the influence of any particular church may be powerful over the members of a non-sectarian and secular corporation, incorporated for a certain defined purpose and with clearly stated powers, is surely not sufficient to convert such a corporation into a religious or sectarian body. That fact does not alter the legal character of the corporation, which is incorporated under an act of Congress, and its powers, duties and character are to be solely measured by the charter under which it alone has any legal existence. There is no allegation that its hospital work is confined to members of that church or that in its management the hospital has been conducted so as to violate its charter in the smallest degree. It is simply the case of a secular corporation being managed by people

who hold to the doctrines of the Roman Catholic Church; but who nevertheless are managing the corporation according to the law under which it exists.   The charter itself does not limit the exercise of its corporate powers to the members of any particular religious denomination, but on the contrary those powers are to be exercised· in favor of any one seeking the ministrations of that kind of an institution.   All that can be said of the corporation itself is that it has been incorporated by an· act of Congress, and for its legal powers and duties that act must be exclusively referred to.   As stated in the opinion of the Court of Appeals, this corporation " is not declared the trustee of any church or religious society.   Its property is to be acquired in its own name and for its own purposes; that property and its business are to be managed in its own way, subject to no visitation, supervision or· control by any ecclesiastical authority whatever, but only to that of the Government which created it.   In respect then of its creation, organization, management and ownership of property it is an ordinary private corporation whose rights are determinable by the law of the land, and the religious opinions of whose members are not subjects of inquiry."

It is not contended that Congress has no power ·in the District to appropriate money for the purpose expressed in the appropriation, and it is not doubted that it has power to authorize the Commissioners of the District of Columbia to enter into a contract with the trustees of an incorporated hospital for the purposes mentioned in the agreement in this case, and the only objection set up is the alleged " sectarian character of the hospital and the specific and limited object of its creation."

The other. allegations in complainant's bill are simply statements of his opinion in regard to the results necessarily flowing from the appropriation in question when connected with the agreement mentioned.

The act of Congress, however; shows there is nothing sectarian in the corporation, and " the specific and limited object of its creation " is the opening and keeping a hospital in the city of Washington for the care of such sick and invalid persons.as

may place themselves under the treatment and care of the corporation. To make the agreement was within the discretion of the Commissioners, and was a fair exercise thereof.

The right reserved in the third section of the charter to amend, alter or repeal the act leaves full power in Congress to remedy any abuse of the charter privileges.

Without adverting to any other objections to the maintenance of this suit, it is plain that complainant wholly fails to set forth a cause of action, and the bill was properly dismissed by the Court of Appeals, and its decree will, therefore, be

*Affirmed.*