Dear Representative Thompson:
I am in receipt of your request for an Attorney General's opinion concerning New Orleans Baptist Theological Seminary's students receiving TOPS awards. Specifically, you questioned:
 Should the New Orleans Baptist Theological Seminary become a member of the Louisiana Association of Independent Colleges and Universities (LAICU), would Louisiana high school graduates eligible for TOPS be permitted to receive their TOPS award if they enroll as undergraduates in the Seminary?
Attorney General Opinion Number 99-129 addressed this issue concerning another private college, St. Joseph Seminary College. That opinion concluded that in the event St. Joseph Seminary College would apply for membership in LAICU and is accepted, qualified students would be able to receive the TOPS award.
The statute governing the Louisiana Tuition Opportunity Program for Student (TOPS) is found at LSA-R.S. 17:3048.1 et seq. As stated in section A(1) of the statute:
 . . . the state shall financially assist any student who enrolls on a full-time basis in a state college or university or a regionally accredited independent college or university in the state that is a member of the Louisiana Association of Independent College or Universities, hereafter in this Chapter referred to collectively as "eligible colleges and universities", to pursue an academic undergraduate degree, and who meets the qualifications of Subparagraph (b), (c), or (d) of this Paragraph . . .
Assuming a privately owned school, such as New Orleans Baptist Theological Seminary, maintains accreditation by the Commission on Colleges of the Southern Association of Colleges and Schools (SACS) and is accepted as a member in LAICU, there are no general prohibitions in the above cited statute which would prevent qualified students from being able to receive TOPS awards. All students are required to meet the eligibility requirements as set forth in LSA-R.S. 17:3048.1 et seq., as well as the rules and regulations set forth by the Office of Student Financial Aid (OSFA) for the implementation of the TOPS scholarship. See LSA-R.S. 17:3048.1(C)(1).
In conclusion, should the New Orleans Baptist Theological Seminary become a member of the Louisiana Association of Independent Colleges and Universities (LAICU), Louisiana high school graduates who are eligible for TOPS would be permitted to receive their TOPS award if they enrolled as an undergraduate at the Seminary.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By:_____________________________ VERONICA L. HOWARD Assistant Attorney General
RPI:VLH:lrs
OPINION NUMBER 99-129
June 14, 1999
22 — B — EDUCATION — COLLEGE OTHER INSTITUTIONS OF HIGHER LEARNING U.S. Const. 1st Amend. 14th Amend. La. Const. Art. 7 § 10.1 La. Const. Art. 7 § 10.1(C)(1) La. Const. Art. 7 § 10.1(D)(1)(a) La. Const. Art. 1 § 8
LSA-R.S. 17:3048.1; LSA-R.S. 17:3048.1(C)(1); LSA-R.S. 17:3801 et seq.; LSA-R.S. 17:3801(C)(2); LSA-R.S. 17:3801(C)(3); LSA-R.S.17:2053; LSA-R.S. 17:2053(D)(1); LSA-R.S. 17:2053(D)(2)
1) In the event St. Joseph Seminary College would apply for membership in LAICU and it is accepted, qualified students would be able to receive TOPS Scholarships.
2) It is within the discretion of the Board of Regents to review the information concerning St. Joseph Seminary College to determine whether it is eligible to participate in the Quality Trust fund.
3) Provided LSA-R.S. 17:2053 is amended to include St. Joseph Seminary College, and it meets all statutory and regulatory requirements, the college would be eligible to participate in the Aid of Independent Institutions Program.
Dr. Joseph Savoie Commissioner of Higher Education 150 Third Street, Suite 129 Baton Rouge, Louisiana 70801-1389
Dear Dr. Savoie:
I am in receipt of your request for an Attorney General's opinion concerning St. Joseph Seminary College's interest in becoming a member of the Louisiana Association of Independent Colleges and Universities (LAICU). You seek an opinion on the following questions:
 1) In the event that St. Joseph Seminary College would apply for membership in LAICU, and in the event that said membership would be accepted, would qualified students be able to receive the Tuition for Opportunity Program (TOPS) scholarships or is there some state restriction they would face?
 2) Would St. Joseph Seminary College be eligible to participate in the Board of Regents' Support Fund?
 3) Would St. Joseph Seminary College be eligible to participate in the Aid of Independent Institutions (Capitation) program? This assumes that the legislation (R.S. 17:2053 et seq) would be amended to add St. Joseph to the list of eligible institutions.
The Louisiana Tuition Opportunity Program for students is found in LSA-R.S. 17:3048.1 et seq. The purpose of this program is found in Section A(1) of that statute and states the following:
 As part of the Louisiana Tuition Opportunity Program for Students, the state shall financially assist any student who enrolls on a full-time basis in a state college or university or a regionally accredited independent college or university in the state that is a member of the Louisiana Association of Independent Colleges or Universities, hereafter in this Chapter referred to collectively as "eligible colleges or universities", to pursue an academic undergraduate degree, and who meets the qualifications of Subparagraph (b), (c), or (d) of this Paragraph. . . .
Unlike the other two programs you have asked about, a TOPS award is granted based on an individual student's performance, subject to the attending college or university's membership in LAICU as well as their accreditation by the Commission on Colleges of the Southern Association of Colleges and Schools. The monies for a scholarship are paid by the Office of Student Financial Assistance (OSFA) directly to the college or university the student is attending.
Assuming regional accreditation is obtained, and provided St. Joseph Seminary College would apply for membership in LAICU and membership is accepted, there are no general prohibitions in the TOPS legislation that would prevent qualified students from being able to receive TOPS scholarships. All students are required to meet the eligibility requirements as set forth in LSA-R.S. 17:3048.1 et seq. as well as the rules and regulations set forth by OSFA for the implementation of the TOPS legislation. See LSA-R.S. 17:3048.1(C)(1).
In your second question, you ask whether St. Joseph Seminary College would be eligible to participate in the Board of Regents' Support Fund. This fund is referred to as the Louisiana Quality Trust Fund and is located in the Louisiana Constitution Article 7, Section 10.1. The enabling legislation which is found in LSA-R.S. 17:3801 et seq. tracks the language found in the Constitution.
This particular program is funded by 8(G) monies that are appropriated by the Legislature. The funds are allocated by the Board of Regents for the purpose of enhancing economic development. As discussed in La. Const. Art. 7 § 10.1(D)(1)(a) and in LSA-R.S. 17:3801(C)(3) these monies can be used for the following purposes:
 (a) The carefully defined research efforts of public and private universities in Louisiana.
 (b) The endowment of chairs for eminent scholars.
 (c) The enhancement of the quality of academic, research or agricultural departments or units within a university. These funds shall not be used for athletic purposes or programs.
 (d) The recruitment of superior graduate students.
As discussed in Attorney General Opinion No. 91-99,
 Based upon the foregoing, it is the opinion of this office that the Louisiana constitution does not limit the use of Support Fund monies for private universities to the first category, i.e., "research efforts", but rather it was the intent of the legislature that private universities could obtain funding for either educational purposes in all four categories set forth in Section (D)(1).
The Board of Regents is required to submit to the Legislature and the Governor a proposed program and budget not less than sixty days prior to the beginning of each regular session for the expenditure of the monies in the Support Fund. See La. Const. Art. 7 § 10.1(C)(1) and LSA-R.S. 17:3801(C)(2). The legislation concerning this particular fund does not require a college or university to be a member of LAICU. The Board of Regents appears to have great latitude in proposing to the Legislature how these 8(G) funds are to be spent.
Article 1, Section 8 of our state constitution provides that no law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof. TheFirst Amendment to the United States Constitution, which is made applicable to the states through the due process clause of theFourteenth Amendment, prescribes any law respecting an establishment of religion or prohibiting free exercise thereof.
The Establishment Clause clearly does not prevent any form of public aid or service to any church affiliated institution.Roemer v. Board of Public Works, 387F. Supp. 1282 citing Huntv. McNair, 413 U.S. 734.
The Supreme Court has also explicitly rejected the notion that ". . . all aid is forbidden because aid to one aspect of an institution frees it to spend its other resources on religious ends." Roemer supra citing Hunt supra.
On the other hand, aid to church-related institutions must be analyzed with the greatest care to ensure that the purposes of the religion clauses aren't violated. Roemer supra citingCommittee for Public Education v. Nyquist, 413 U.S. 756,93 S.Ct. 2955 (1973).
In evaluating administrative entanglement, the Court must examine three factors: the charter and purpose of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority. Roemer citing Lemon v.Kurtzman, 403 U.S. 602, 91 S.Ct. 2105 (1971).
The Court in Roemer opined that even though the possibility existed that courses in theology and religion required at colleges and universities receiving state aid could be devoted to deepening religious experiences in a particular faith rather than to teaching theology as academic discipline, and even though there was no indication that steps had been taken to insure that public funds were not used to support such programs, judicial concern about such possibility could not, standing alone, warrant striking down a state aid statute as unconstitutional under the establishment clause.
Additionally, the Court in Roemer stated that where the secular aspects of a school may be separated from the sectarian, aid to the sectarian aspect regardless of the form of the aid will necessarily be religiously neutral.
In Witters v. Washington Department of Services for theBlind, 474 U.S. 481, 106 S.Ct. 748, the U.S. Supreme Court held that the First Amendment did not preclude the state from extending assistance under a vocational rehabilitation services assistance program to a blind person studying at a Christian college and seeking to become a pastor, missionary, or youth director. Under the program, state aid could flow to religious institutions only as a result of genuinely independent and private choices of aid recipients. However, the Supreme Court held that it was not likely that any significant portion of aid expanded under the program as a whole would end up flowing to religious education.
In Tilton v. Richardson, 403 U.S. 672, 91 S.Ct. 2091
(1971), the U.S. Supreme Court stated that the crucial question as to whether a legislative program violates the religion clauses of the First Amendment is not whether some benefit accrues to a religious institution as a consequence of the legislative program, but whether its principal or primarily effect advances religion.
The Supreme Court stated that the simplistic argument that every form of financial aid to church-sponsored activity violates the Religion Clauses was rejected long ago in Bradfield v.Roberts, 175 U.S. 291, 20 S.Ct. 121 (1899).
The Supreme Court discussed the fact that religion does not necessarily so permeate the secular education provided by church-related colleges and universities nor so seep into the use of their facilities that all government grants to such institutions are necessarily barred by the Establishment Clause of the First Amendment.
It appears that St. Joseph Seminary College offers a four-year liberal arts program which emphasizes philosophy. The students who successfully complete four years of undergraduate work receive a Bachelor of Arts (B.A.) in Liberal Arts. This degree can be used to pursue a large spectrum of professions. The college does not graduate priests or ministers. Therefore, it is within the discretion of the Board of Regents to review the information concerning St. Joseph Seminary College and to determine whether this college is eligible to participate in the Quality Trust Fund.
In your third question, you ask whether St. Joseph Seminary College would be eligible to participate in the Aid of Independent Institutions (Capitation) Program. You add that this assumes that the legislation would be amended to add St. Joseph to the list of eligible institutions. The purpose of this program which is found in LSA-R.S. 17:2053 is to reimburse nonpublic institutions of higher education located within the state for educating Louisiana residents. (See Section A). Of particular concern are Sections E and H. They state the following:
 E. In computing the amount due eligible institutions under this Section, there shall be excluded completed semester hours of instruction that have been included for purposes of reimbursement pursuant to any other program authorized by the legislature. Students majoring in theology or divinity shall be excluded from the computation of reimbursement due to any eligible institution.
 H. No institution receiving funds under the provisions of this Section shall use any of those funds for religious or intercollegiate athletic purposes. The Board of Regents shall adopt and implement appropriate regulations to assure that no funds granted to an eligible institution under the provisions of this Section are used for religious or intercollegiate athletic purposes.
In Attorney General Opinion No. 75-1731, our office issued an opinion concerning the criteria and procedures to be adopted by the Board of Regents for administering the program of and to non-public institutions of higher education. Specifically, our office stated:
 Because funds under Act 562 of 1975 will be awarded to non-public institutions of higher education which have religious affiliations or relationships, the regulations governing the award of those funds must be adopted with the provisions of Article 1, Section 8 of the Louisiana Constitution and the First Amendment of the United States Constitution in mind.
The author of this opinion reviewed the Roemer andTilton cases, supra, as well as Hunt v. McNair,413 U.S. 734(1973) in terms of the scope of the regulations to be adopted by the Board of Regents in implementing LSA-R.S. 17:2053. The author of the opinion opined the following:
 . . . the Board of Regents must adopt regulations which contain sufficient safeguards to prohibit institutions receiving funds under the Act from using those funds for religious purposes. The regulations must also be structured in a manner to avoid involving the Board of Regents in excessive entanglement with the religious activities that may exist at the several institutions which will be the recipients of funds under Act 562 or 1975.
Although Sections E and H prohibit the computation of reimbursement to students that major in theology, divinity, and religion, a Bachelor of Arts (B.A.) in Liberal Arts does not appear to apply to this prohibition.
As discussed in Opinion No. 75-1731, a safeguard is provided in LSA-R.S. 17:2053(D)(1) which requires eligible institutions to submit to the Board of Regents semiannually "such reports as are required by the Board pertaining to this Section." In that opinion our office opined:
 . . . This office construes that provision to require semiannual reports from institutions receiving funds under the Act which will show the use made of the funds received, and to provide the Board with a basis for determining whether the funds are used for religious purposes.
Additionally, Section 2053(D)(2) requires the institutions to "maintain and make available for inspection, such records as are necessary to the administration of this section." In Opinion No. 75-1731 our office opined:
 . . . This office construes that provision as requiring that the regulations provide that institutions receiving funds under the Act maintain adequate financial records to permit verification that funds received under the Act have not been used for religious purposes.
Therefore, provided LSA-R.S. 17:2053 is amended to include St. Joseph Seminary College, and it meets all statutory and regulatory requirements, the college would be eligible to participate in the Aid of Independent Institutions Program.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc