EDITH H. JONES, Circuit Judge,
joined by JERRY E. SMITH, BARKSDALE, EMILIO M. GARZA and DeMOSS, Circuit Judges, dissenting:
We respectfully dissent from the decision to remand this case for further proceedings in the district court.
One must pity the parties and the district court when, or if, they grapple with remand. Since there is no majority legal rationale to follow, they need a hint: count heads. Eight of us say that the clergy in schools (CIS) program is or may be constitutional, six say it can never be so, and one abstains on the merits for jurisprudential reasons. To read the three “remanders,” who quote often and approvingly from the “principal dissent,” the reader might not remember where they came out. But they appear to conclude that CIS can play a constitutionally approved role in the Beaumont Independent School District if it has a secular purpose and if it is arrayed among other voluntary programs that teach similar shared civic values. While posing as the sensible middle between contentious factions, the remanders’ position nevertheless inflicts damage — on a sense of legal proportion and on the already-turbid law of the Establishment Clause.
I. NO SENSE OF PROPORTION
What is the value of remand here? The remanders never clearly state what additional facts may be proved in order to establish the heretofore uncontested proposition that BISD had a legitimate secular purpose for creating the CIS program.[1] It is both legitimate and secular to invite semi-official visitors to campus to reinforce in public school students the existence and the desirability of conforming to shared standards of community morality. Placing emphasis on the substance of the program, rather than on the irrelevant and wholly personal, unofficial motives of a few of the program’s supporters, there is no genuine issue of material fact that needs further development.
Similarly opaque is the remanders’ discussion about what further information the *480 district needs to elicit concerning other volunteer programs in order to prove its religious “neutrality.” Our legal objections to thi§ holding will be discussed shortly. What is troubling at this point is the idea that the school district must spend additional tens of thousands of dollars in attorneys’ fees to defend a program that may reach 60-70 students in the high school twice a year for a total of four hours.[2] CIS is a program of exceedingly modest scope and exceedingly stringent limitations on its clergy participants. If this tiny innovation in community values-based education must run a prohibitively expensive legal gauntlet, then the reman-ders’ position can hardly be differentiated in practical terms from Judge Wiener’s dissent. Rational school districts cannot afford to litigate over similar innovations and will be discouraged from pursuing any initiatives that call into question their appearance of neutrality between religion and non-religion. The remanders’ position may ultimately vindicate BISD, but at great cost to schools’ autonomy and creativity in addressing the pressing subject of values-based education.
II. ESTABLISHMENT CLAUSE CONFUSION
Unlike the remanders and Judge Wiener’s dissent, we are not constitutionally concerned about the alleged pro-religious symbolism connoted by the Clergy in Schools program, nor would we chide the Beaumont school board for making “a difficult case out of an easy one” by excluding lay counselors from this volunteer program.[3] The other opinions are unnecessarily overwrought by the Allegheny endorsement test, which has been applied only to prohibit government-sponsored religious speech. The more clearly analogous cases [4] are those that “endorse” government’s sending “even a cleric” to perform wholly secular tasks.
The endorsement test “precluded] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred.” County of Allegheny v. ACLU, 492 U.S. 578, 593, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989) (quoting Wallace v. Jaffree, 472 U.S. 38, 70, 105 S.Ct. 2479, 2497, 86 L.Ed.2d 29 (1985)). The content of the CIS program does not do so. By its very nature and proven operation, the CIS program does not inculcate religious beliefs or practices. Quite the contrary, the record refutes any suggestion of improper proselytizing by the clergy volunteers.[5] The volunteers are required to shed all evidence of their profession — from clerical collars to scriptural quotations — in order to participate. The facts that the purpose and operation of the program are wholly secular, and that the Does find no constitutional fault in the content of the program, reinforce that there is no government-sponsored religious speech and no inculcation or endorsement of religious beliefs.
The Does contend instead that because clergy are exclusively involved in the program, the District has singled them out for special status and has effected “a symbolic union” with organized religion. This argument fails for at least three reasons. First, Supreme Court caselaw does not support this contention. Agostini expressly disavowed the presumption applied in earlier Court cases that the presence of government-subsidized teachers or assistants on parochial school premises inherently involves unconstitutional indoctrination or symbolic union. Agostini v. Felton, 521 U.S. 203, 222, 117 S.Ct. 1997, 2010, 138 *481 L.Ed.2d 391 (1997); see also Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 12-13, 113 S.Ct. 2462, 2468-69, 125 L.Ed.2d 1 (1993). In the same way, it should not be presumed that the presence of clergy on a public school campus automatically raises constitutional questions.[6] If anything, given the fact that in some religious denominations, non-ordained pastors and religious workers support themselves by holding teaching positions, no such assumption is warranted.
Further support for this conclusion is found in a series of cases in which the Court emphasizes that the government may send “even a cleric” to perform a secular task. Bradfield v. Roberts, 175 U.S. 291, 298, 20 S.Ct. 121, 123, 44 L.Ed. 168 (1899) (holding that the religious affiliation of a hospital was “wholly immaterial” to the Establishment Clause analysis); Roemer v. Bd. of Pub. Works of Maryland, 426 U.S. 736, 746, 96 S.Ct. 2337, 2344, 49 L.Ed.2d 179 (1976). In Bowen v. Kendrick, the Court approved the facial constitutionality of a federal statute that subsidized both religious and nonreligious organizations to counsel pregnant, unwed teenagers in nonsectarian matters. Bowen, like Agostini, distinguished between aid that serves religious and that which serves nonsectarian functions.[7] And in Bowen, the Court rejected the “symbolic union” argument in a more complex situation than is presented here. The counseling programs authorized by Congress could occur off-campus, in and around religious facilities, and there was no prohibition, as there is in the CIS program, of one-on-one counseling. Continuous monitoring of the counseling was not required, and the program contemplated that individual unwed mothers could be counseled by members of one religious organization. Bowen refused to presume that the statute would be implemented in an unconstitutional manner. 487 U.S. at 611-12, 108 S.Ct. at 2575-76. The decision holds that religious agencies may be assigned and even subsidized by government to perform secular tasks under appropriate guidelines. Bowen would seem to ordain the approval of a program like CIS, which enforces even more rigorous guidelines for secular counseling and uses clergy as sporadic, unpaid volunteers.
Second, as Rosenberger makes clear, courts must focus “on the nature of the benefit received by the recipient.” Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 843, 115 S.Ct. 2510, 2523, 132 L.Ed.2d 700 (1995). In funding cases, the benefit is apparent — financial assistance. In order for a funding program to pass the endorsement test, the government cannot define the recipients of aid by reference to religion or otherwise encourage religious activity as a condition of receipt of aid. Agostini, 521 U.S. at 230-31, 117 S.Ct. at 2014. But this criterion does not apply in the present case because neither subsidies nor religious activities are involved. Moreover, there is no evidence that students were invited to participate in CIS because of any religious test or affiliation. Thus, any benefit to religion is too attenuated to violate the Establishment Clause. As the Court noted in Bowen, “religious organizations can help solve the problems to which the [program] is addressed. Nothing in our previous cases prevents [BISD] from making such a judgment or from recognizing the important part that religion or religious organizations may play in resolving certain secular problems ... To the extent that this ... recognition has any effect of advancing religion, the effect is at most ‘inci *482 dental and remote.’ ” Bowen, 487 U.S. at 607,108 S.Ct. at 2573.[8]
Finally, the Does’ argument that the flaw in the program is its exclusive reliance on clergy proves too much. Clergy members are not inanimate religious symbols whose mere presence in a school generates constitutional suspicion. Compare Allegheny, supra. Indeed, in Roemer, the Court upheld a government subsidy to Maryland’s schools of higher education though well aware that in most of the recipient schools, priests wearing clerical garb would teach the subsidized classes. Roemer, 426 U.S. at 756, 96 S.Ct. at 2350; see also Bradfield, supra. Critically, however, those classes were secular. Likewise, the presence of clergy volunteers should not alone imply endorsement.[9] Their prescribed message is secular. The clergy members were avowedly recruited because of their expertise in counseling, communication, and understanding of the community — in other words, for their secular, not their religious skills.[10] The District no more endorsed religion by sponsoring CIS than it would by inviting a speaker like Archbishop Desmond Tutu or Rabbi Hyman to deliver a non-proselytizing address to the students.
Because we believe that the relevant cases here are Agostini, Bowen, Roemer, and Bradfield, and that Allegheny’s test offers more chance for mischief than clarification in the school context, we dissent from remanding this case and would affirm the district court’s judgment that it is constitutional as a matter of law.

. The original panel majority opinion did not quarrel that this first prong of the Lemon test was satisfied. See Doe v. Beaumont Independent School District, 173 F.3d 274, 287 (5th Cir.1999).

. The number of students potentially affected in other BISD schools is similarly small.

. Several of us concur in Judge Jolly’s separate opinion on standing, but we reach the merits because the rest of the court does so.

. And it must be admitted that hardly anything is "clear” under the Court’s Establishment Clause caselaw.

. The one instance in which a volunteer quoted scripture and was reproved is the exception that, on this record, proves the rule.

. See McDaniel v. Paty, 435 U.S. 618, 629, 98 S.Ct. 1322, 1329, 55 L.Ed.2d 593 (1978) (“[there is] no persuasive support for the fear that clergymen ... will be less careful of anti-establishment interests ... than their unor-dained counterparts.”).

. The Court also stated in Bowen: “... there is nothing inherently religious" about the activities of education and counseling authorized by the federal statute. 487 U.S. at 605, 108 S.Ct. at 2572.

. The remainders' opinion asserts that this analysis of the status of the CIS program within BISD’s panoply of volunteer counseling programs is ambiguous. We disagree. First, the fact that CIS was treated no differently from other volunteer programs reinforces the conclusion that any benefit to or preference for religion was incidental and remote. See Bowen, supra, 487 U.S. at 607, 108 S.Ct. at 2573. Second, to the minor extent that Allegheny is relevant to this case, we agree with the majority that the proper context in which to consider the possible endorsement of religion is the full scope of the BISD volunteer programs, not the novel "single decisional element” test espoused by the dissent. If anything, it is the remanders’ novel "thick and thin” theory of religious neutrality that is ambiguous.

. As Justice Brennan notes in Paty, the Establishment Clause "does not license government to treat religion and those who teach or practice it, simply by virtue of their status as such, as subversive of American ideals and therefore subject to unique disabilities.” 435 U.S. at 641, 98 S.Ct. at 1335 (Brennan, J., concurring).

.Whether or not this court subscribes to the District’s attribution of unique counseling and communication skills, as well as specific training in ethics, to the clergy is not constitutionally relevant. School districts are free to experiment with the curriculum, particularly in areas as important as the inculcation of fundamental shared civic values, so long as they do not prescribe religious exercises or compel assent to religious belief.