PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PETER GLASSMAN,

        *Plaintiff-Appellant,*

v.

ARLINGTON COUNTY, VIRGINIA;
1210 NORTH HIGHLAND STREET -
CLARENDON LIMITED PARTNERSHIP;
THE VIEWS AT CLARENDON
CORPORATION, INCORPORATED;
VIRGINIA HOUSING DEVELOPMENT
AUTHORITY; BOARD OF
SUPERVISORS OF ARLINGTON
COUNTY, VIRGINIA; FIRST BAPTIST
CHURCH OF CLARENDON,

        *Defendants-Appellees.*

No. 10-1496

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:09-cv-01249-CMH-TRJ)

Argued: September 22, 2010

Decided: December 23, 2010

Before NIEMEYER and DUNCAN, Circuit Judges,
and Robert J. CONRAD, Jr., Chief United States District
Judge for the Western District of North Carolina,
sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Duncan and Judge Conrad joined.

---

**COUNSEL**

**ARGUED**: Andrew S. Oldham, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, PLLC, Washington, D.C., for Appellant. James Patrick Taves, GREEHAN, TAVES, PANDAK & STONER, PLLC, Chantilly, Virginia; Raighne Coleman Delaney, BEAN, KINNEY & KORMAN, PC, Arlington, Virginia, for Appellees. **ON BRIEF**: Stephen G. Cochran, ROEDER, COCHRAN, PARROTT, CHANDLER & KINSEL PLLC, McLean, Virginia; Joseph S. Hall, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, PLLC, Washington, D.C., for Appellant. T. David Stoner, GREEHAN, TAVES, PANDAK & STONER, PLLC, Chantilly, Virginia; Stephen A. MacIsaac, County Attorney, Carol W. McCoskrie, Assistant County Attorney, ARLINGTON COUNTY ATTORNEY'S OFFICE, Arlington, Virginia, for Appellees Arlington County, Virginia, and Board of Supervisors of Arlington County. H. Robert Showers, Timothy Paul Bosson, SIMMS SHOWERS, LLP, Leesburg, Virginia, for Appellee First Baptist Church of Clarendon. Robert M. Tyler, Jeffrey D. McMahan, Jr., MCGUIREWOODS LLP, Richmond, Virginia, for Appellee Virginia Housing Development Authority.

---

**OPINION**

NIEMEYER, Circuit Judge:

In 2004, the First Baptist Church of Clarendon, in Arlington County, Virginia, proposed—and Arlington County approved—a plan to develop a parcel of land that the Church owned and on which the church building was located. Under

the plan, the existing church building would be razed, and in its place a 10-story building would be erected, which would include a new church building and church facilities on the first two floors, and apartments on the upper eight floors, to include affordable units for low and moderate income people as well as market-rate units.

In furtherance of the plan, the Church conveyed the property to a private development corporation, and the development corporation thereafter created a two-unit condominium on the property, one for the Church and one for the apartments. The Church financed the construction of its portion of the building, and Arlington County and the federal government provided loans to finance construction of the apartments.

Peter Glassman, a taxpayer in Arlington County, who lives less than one block from the property, commenced this action under 42 U.S.C. § 1983 against Arlington County, the Commonwealth of Virginia, the First Baptist Church, and the developer, alleging that Arlington County's involvement in the development violates the Establishment Clause of the U.S. Constitution, as well as its counterpart in the Virginia Constitution. He seeks to enjoin completion of the project, which has already commenced, and to order rescission of the loan and restitution to Arlington County of all monies advanced by the County. In his complaint, Glassman alleges that the County's announced purpose of providing affordable housing in Arlington "has been used to mask what is really a subsidy from the County to support the building of the [new] Church, at the expense of the affordable housing cause." This is evidenced, he alleges, by the County's approval of above-market payments for the housing portion of the project, by the presence of both Church and County members on the developer's board, and by the physical layout of the building in which "[t]he housing units will share with the Church a common foundation, common elevator, and other common infrastructure." Glassman also alleges that the funding arrangement,

administration, and building layout create an unconstitutional, excessive entanglement of the Church and the County.

The district court granted the defendants' motion to dismiss the complaint, concluding, in a thorough 24-page opinion, that the facts alleged in the complaint did not state a plausible claim upon which relief could be granted for a violation of the Establishment Clause. Having found no violation of the U.S. Constitution, the court also found no violation of the Virginia Constitution, which has been construed in "parallel" to the U.S. Constitution.

For the reasons that follow, we affirm.

I

Because we are reviewing the district court's order dismissing Glassman's complaint under Federal Rule of Civil Procedure 12(b)(6) and therefore are evaluating the complaint only for legal sufficiency, we take as true the facts alleged in the complaint in determining whether they support a plausible claim for relief. *See Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009).

Summarizing his complaint, Glassman states that he "has a substantial grievance concerning the County and State's financing of a Baptist Church building less than one block from his home." He alleges that (1) the nature of the relationship between and among the First Baptist Church, the developer, and the County in the development of this project; (2) the nature of the funding; and (3) the planned structure of the completed project support his claim that Arlington County has violated the Establishment Clause of the First Amendment and its counterpart in the Virginia Constitution.

The complaint then recites the transaction in some detail. In the 2003-04 period, the First Baptist Church decided to develop the property on which its church building was then

located in order to rebuild the church building and to construct affordable housing. By including affordable housing in the plan for the project, the Church intended to take advantage of funding from Arlington County's "Affordable Housing Investment Fund"; funding by the Virginia Housing Development Authority; and tax credits from the federal government for low-income housing.

The plan called for razing the existing church building and constructing a new building, including a new sanctuary and church facilities, 70 affordable housing apartments, 46 market-rate apartments, and a parking garage for the apartment tenants. To implement the plan, the Church created a nonprofit corporation to serve as the developer of the project —the Views at Clarendon Corporation (the "Developer")— which had a seven-person board consisting of three members designated by the Church, one of whom was the president of the board, three "Affordable Housing Advocates," and one member appointed by Arlington County. The Developer in turn created a Virginia limited partnership—1210 North Highland Street, Clarendon Limited Partnership—to purchase the property from the Church and administer the funding. In forming the limited partnership, the Developer made itself the general partner and the limited partner. The 1210 N. Highland Partnership then created a two-unit condominium on the property, with one unit for the portion of the project to be occupied by the Church and the other for the housing portion of the project. All funding for the project was paid directly to the 1210 N. Highland Partnership.

The configuration of the physical structure of the building called for a three-story below-ground tenant parking garage and a ten-story above-ground building. The first two stories above ground, which had a footprint larger than the eight-story tower, were largely dedicated to Church use, including the sanctuary. The portion of the structure extending beyond the tower's footprint was designed to accommodate the Church's front entrance and a steeple. The eight-story tower

was dedicated to housing and was comprised of 70 below market-rate apartments, to be rented as affordable housing for low and middle income persons, and 46 market-rate apartments. The tower lobby and elevator on the first floor were to be used in common by both church members and tenants.

The construction of the Church's portion of the structure, estimated to cost $5.8 million, was funded mostly by the $5.6 million proceeds of the Church's sale of the property to 1210 N. Highland Partnership. The construction of the housing portion of the project and parking garage was funded by a $13.1 million loan from Arlington County's Affordable Housing Investment Fund, a $14.5 million loan from the Virginia Housing Development Authority, and an $18.6 million loan funded by the federal government. The complaint does not allege that any money from these public sources was paid to the Church except for the $5.6 million for the purchase of the property.

The complaint asserts that Arlington County and the Virginia Housing Development Authority overvalued the apartments in making loans to the project and that this overvaluing was necessary to make the project work financially. It states that, as a consequence, the Church benefited, because the viability of the project enabled construction of a new church building. Based on this indirect benefit, the shared membership on the Developer's board, and the physical design of the building, Glassman asserts that the County's actions involved it in a constitutionally-prohibited relationship with the Church.

After briefing and argument, the district court, by an order dated April 12, 2010, granted the defendants' motion to dismiss. After examining all of the relationships between the parties, as well as the funding scheme and the physical structure, the court held that Glassman had failed to allege facts showing that he was entitled to relief for violation of the Establishment Clause or Virginia's counterpart. The court found: (1)

"Despite an innuendo plaintiff tries to draw from such allegations, the facts alleged in the Amended Complaint show that the purpose of the loan was to assist in the development of affordable housing in Arlington County"; (2) "[t]he Amended Complaint fails to allege facts from which this Court could conclude that the County's aid results in any indoctrination attributable to the County or even [the First Baptist Church]"; (3) the complaint does not support any argument that the First Baptist Church "was paid more than fair market value for its property"; and (4) the County's actions in approving the project and lending money for affordable housing did not create excessive entanglement, given that "[p]laintiff alleges no facts that the County is actively engaged in developing [the First Baptist Church's] sanctuary or, for that matter, the affordable housing component of the project," and the County's loan was "not for the construction of a new sanctuary or other religious facilities of [the First Baptist Church]."

Glassman filed this appeal, challenging the district court's April 12, 2010 order.

## II

Our standard for review of the district court's order is especially important in this case because the complaint, which is 33 pages long, is comprised not only of factual allegations, but also of conclusions, characterizations, opinion, speculation, and argument. For example, it alleges, "This case presents a remarkable example of a state actor taking unprecedented steps to promote, sponsor and fund the demolition, rebuilding and renovation of a Baptist Church with taxpayer money." Similarly, it states, "In short, the County's support of the Church project is so intertwined with religion that the County's affordable housing mantra rings hollow; such an unprecedented and irresponsible use of affordable housing dollars suggests that the County, at worst, actually acted with the purpose of establishing and promoting religion or, at best, its actions have the perceived and actual effect of advancing

religion." Speculating, the complaint states, "The same Articles of Incorporation provide for an Initial Board of Trustees of the Church. Certain of these Church trustees would later become members of the supposed 'independent' nonprofit Board of the Views Corporation [the developer], which the Church created ostensibly to build and manage the affordable housing units separately from the Church." And again, "assuming that the government-subsidized loans are ever paid off, on information and belief the Church will also be the deFacto [sic] owner of the [Developer's] residential property, with access to the perpetual funding mechanism that the property provides."

While these statements are not inappropriate, they nonetheless cannot be taken as a basis to support a plausible claim. To determine whether a plausible claim has been asserted, we consider the *factual* allegations of the complaint to determine whether they plausibly show an entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To be sure, Glassman's complaint does include extensive factual allegations related to the history and the nature of the transaction at issue.

When reviewing an order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6), we determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Giacomelli*, 588 F.3d at 193 (internal quotation marks, emphasis, and citations omitted). As we explained,

> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557). Under this standard, "we need not accept the legal conclusions drawn from the

facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted). As the Supreme Court has admonished, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Employing these guidelines, we now determine whether the complaint states a claim for an Establishment Clause violation that is plausible on its face.

### III

In determining whether Arlington County acted in a manner that effectively makes a law "respecting an establishment of religion," as prohibited by the First Amendment, we focus on both *the purpose* of the County's activity in participating in the development of the housing project and *the effect* of its involvement. The Establishment Clause prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an "excessive government entanglement" with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also Agostini v. Felton*, 521 U.S. 203, 232 (1997) (stating that "excessive entanglement" has sometimes been considered independently, and sometimes as part of the "effects" analysis). But it does not prohibit all interaction between church and state. To the contrary, "[i]nteraction between church and state is inevitable, and we have always tolerated some level of involvement between the two." *Agostini*, 521 U.S. at 233 (internal citation omitted). Thus, the test for determining whether a legislative act withstands an Establishment Clause challenge requires (1) that the act have a secular purpose; (2) that its principal or primary effect be neither to advance nor to inhibit religion; and (3) that it not foster excessive government entanglement with religion. *See Lemon*, 402 U.S. at 612-13; *Ehlers-Renzi v. Con-*

*nelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 288 (4th Cir. 2000).

In this case, Glassman acknowledges that Arlington County's announced purpose to provide affordable housing in Arlington County was a secular purpose. But he argues that this announced purpose was a sham and that the County's real purpose was to aid the First Baptist Church in rebuilding its church. This, he claims, had the primary effect of advancing the Baptist faith. He also contends that Arlington County became unconstitutionally entangled in the Baptist religion through its involvement in the project.

We now examine the complaint under the applicable test to determine whether the facts alleged support his claim.

A

We ask first whether the County's activity in this project had a secular purpose. This first prong of the *Lemon* test presents a "fairly low hurdle, which may be cleared by finding a plausible secular purpose on the face of the regulation." *Ehlers-Renzi*, 224 F.3d at 288 (internal quotation marks and citations omitted). But the proffered secular purpose must be "sincere and not a sham." *Edwards v. Aguillard*, 482 U.S. 578, 587 (1987).

While Glassman acknowledges that the "County invokes affordable housing as the stated rationale to support this . . . project," he nonetheless argues that the County's true purpose was to advance the Baptist faith by helping the First Baptist Church rebuild its church. To argue that the announced purpose was not sincere, he relies on the County manager's alleged statement that any approved project would have to produce sufficient capital to meet the Church's needs. But this statement does not necessarily indicate a purpose to advance the Baptist faith. It is self-evident that the affordable housing project could not have gone forward if it were not beneficial

to all involved. If the County wished to achieve its secular purpose of building affordable housing, it would have to support a proposal that would also meet the needs of the Church, as well as the other relevant parties to the project. Glassman has alleged no facts to suggest that County officials intended to benefit the Church rather than simply attempting to craft a proposal that was workable for all involved.

In an effort to show otherwise, Glassman points to a series of e-mails sent by members of the Church discussing the Church's construction costs and the use of County loan funds to meet those costs. These allegations, again, do not support a claim that the County had a religious purpose because the e-mails cannot be attributed to any government actor. Indeed, the only County e-mail mentioned indicates the County's contrary intent, asking that Church members remove the Church's costs from spreadsheets before sending them to the County.

The County's announced purpose to provide affordable housing is undoubtedly a legitimate, secular goal, and we conclude that the allegations in the complaint do not support the claim that this secular goal was a sham or that the County had a purpose to advance religion in deciding to lend money to the project. Accordingly, we readily conclude, as did the district court, that the complaint does not set forth a plausible claim that would support an Establishment Clause violation based on a purpose to advance religion.

B

The second prong of the *Lemon* test is directed at whether the County's activities have *the principal or primary effect* of advancing religion. This prong could be satisfied by a showing that County funds were used to fund the religious activities of the First Baptist Church. *See Bowen v. Kendrick*, 487 U.S. 589, 614-15 (1988). It could also be satisfied if the County's activities in the project amounted to government

indoctrination, or defined program recipients by reference to religion, or created an excessive entanglement with religion. *See Agostini*, 521 U.S. at 234.

Glassman devotes a majority of his allegations to this second prong of the *Lemon* test, alleging in the complaint three broad categories of facts to support his claim: (1) the County overvalued the affordable housing units with the result that their funding was actually "a subsidy from the County to support the building of the church"; (2) the physical layout of the building, in which the apartment tenants "will share with the Church a common foundation, common elevator, and other common infrastructure," creates "a religious overtone," because the tenants would "literally pass through the Church's property, overlook the Church's steeple, and be subject daily to the Church's message"; and (3) the County has "appointed a County representative to sit on the Church-dominated board of the not-for-profit [development corporation] that will oversee the construction" and thereby "has become excessively entangled with the Church."

As to Glassman's first point, there are no factual allegations supporting the conclusion that the County overvalued the affordable housing to provide a subsidy for the Church. More relevant would be the allegation that the County overvalued the payment to be made to the Church for its property—the $5.6 million purchase amount. But the allegations of the complaint do not support a claim that $5.6 million constituted an overpayment. Although the complaint does allege that the Church property, as previously zoned, was worth only $1.1 million, it acknowledges that the property was rezoned for the project,* and as rezoned was worth $10.5 million. In addition, the complaint alleges that the County manager determined that the value of the air rights on the property, as was needed to construct the apartment tower over the Church, was $5.8

---

*Earlier litigation challenged the legality of the rezoning, but those efforts were ultimately unsuccessful.

million. Accordingly, the County's $5.6 million payment for the property to 1210 N. Highland Partnership can hardly be argued to be an overvaluation. Moreover, the complaint includes no other factual allegation that the Church received any funds from the County or the State, other than the $5.6 million representing the property's purchase price. Rather, the complaint reaffirms that this was the sum total paid to the Church when it alleges that the amount that the Church received from the County for the purchase of the land was "coincidentally" the amount estimated by the Church to be necessary to construct the Church's portion of the project.

The complaint does devote numerous paragraphs to explaining how the costs for the project increased over the years to a point where they exceeded the fair market value of the apartments. But these allegations have little relevance to a suggestion that the County subsidized the Church. They can only be taken to mean that the County was willing to pay more than it had initially estimated in order to have affordable housing in this densely populated portion of Arlington County.

Glassman also argues that the physical layout of the Church placed the tenants in close proximity to the Church so as to create a "religious overtone." This proximity of secular tenants to church property, however, cannot justify an argument that the tenants would be subject to religious indoctrination. The only areas of the building shared by Church members and the tenants were the lobby and the elevator, and these, by their nature, are not places where religious indoctrination would occur. Glassman's allegation that "requiring" the tenants to see the Church's steeple somehow violates the Establishment Clause is no more forceful than an argument that *his* viewing the Church's steeple from his own home, within a block of the Church, led to unconstitutional indoctrination.

Finally, Glassman contends that the County has become excessively entangled with the Church because the Church

appointed three members of the development corporation's board. He insinuates that this arrangement could allow the Church to exert unconstitutional control over the Developer. But he includes no allegation to suggest that the Church in any way controls the board members or directs their activities as board members of a secular non-profit corporation. It is well established that a non-profit organization does not become sectarian merely because its directors are members of a religious organization. *See Bradfield v. Roberts*, 175 U.S. 291, 298 (1899) ("Whether the individuals who compose the corporation under its charter happen to be all Roman Catholics, or all Methodists, or Presbyterians, or Unitarians, or members of any other religious organization, or of no organization at all, is of not the slightest consequence with reference to the law of its incorporation, nor can the individual beliefs upon religious matters of the various incorporators be inquired into"). Likewise, the County's appointment of a board member can hardly be considered an action establishing religion, especially when the person is a board member of a secular corporation dedicated to construction of an affordable housing project funded by the County. Such participation by the County can only be characterized as a necessary involvement to monitor funding of a secular project.

Glassman also contends, whether as part of the effects test or a separate third prong of the Establishment Clause test, that the project will result in excessive entanglement because the administrative cooperation between the County and the Developer will require pervasive government monitoring to protect against indoctrination. *See Agostini*, 521 U.S. at 233. But he points to no factual allegations other than the inevitable interaction required to monitor funds. *See id.* at 233-34. In a project like this one, the County would, of course, be required to monitor the use and administration of its funds to prevent misappropriation. Such monitoring, however, does not support a claim of excessive entanglement. *See Bowen*, 487 U.S. at 615-17. Similarly, the County's assistance in overcoming obstacles in respect to funding and even zoning

would not constitute excessive entanglement. *See Agostini*, 521 U.S. at 233-34.

In short, the complaint does not allege facts to support Glassman's contention that Arlington County's participation in this joint venture has the effect of advancing religion or excessively entangles the County and the Church. All of the complaint's factual allegations are completely consistent with the legitimate joint effort of the Church and the County to bring about the development of a real estate project, in which the Church funds construction of the portions to be used for sectarian purposes and the County funds construction of the portions to be used for the secular purpose of providing affordable housing. We hold that this type of interaction among the County, the Developer, and the Church for development of this real estate project does not result in the establishment of religion.

Thus, we agree with the district court that the complaint fails to allege a plausible claim for an Establishment Clause violation.

IV

The disposition of Glassman's claim for violation of the Virginia Constitution follows our disposition of his claims for violation of the U.S. Constitution because the protections under the Virginia Constitution are "parallel" to those of the U.S. Constitution. *See College Bldg. Auth. v. Lynn*, 538 S.E.2d 682, 691 (Va. 2000); Va. Const. art. I, § 16. Thus, as Glassman's claim under the U.S. Constitution fails, so too does his claim under the Virginia Constitution.

In arguing to the contrary, Glassman cites a Virginia Attorney General's opinion and a Virginia Supreme Court case to argue that Virginia's Establishment Clause provides greater protection than is provided under the U.S. Constitution. *See* 1994 Va. Op. Att'y Gen. 21, 1994 WL 58403; *Almond v. Day*,

89 S.E.2d 851 (Va. 1955). But both of these sources deal with Article 8, § 10 (formerly § 141), of the Virginia Constitution, a provision that previously prohibited appropriations to private schools and now prohibits appropriations to sectarian schools. Because these sources deal with an entirely separate constitutional provision, they have no relevance here.

Glassman points to other cases that observe that no State protects religious freedom more fully than does Virginia, but these cases do not advance his argument, because none of them states that the Virginia Constitution provides more protection than the U.S. Constitution. *See, e.g.*, *Reid v. Gholson*, 327 S.E.2d 107 (Va. 1985); *Jones v. Commonwealth*, 38 S.E.2d 444 (Va. 1946).

V

Finally, we conclude that the district court properly dismissed Glassman's remaining claims for civil conspiracy and unjust enrichment.

"To establish a civil conspiracy claim under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Because we hold that the defendants' actions in this case did not result in the "deprivation of a constitutional right," we conclude that Glassman's civil conspiracy claim was properly dismissed.

The district court dismissed Glassman's unjust enrichment claim based on Glassman's failure properly to plead that he had "conferred some benefit on the defendant" or that "any party ha[d] been unjustly enriched at his monetary expense." *Glassman v. Arlington County*, No. 01:09-cv-1249, 2010 WL 1488515, at *11 (E.D. Va. Apr. 12, 2010). On appeal, Glass-

man has not challenged the grounds for this ruling and therefore has waived this issue.

## VI

Taking the well-pleaded facts of the complaint, we are presented with an arrangement under which Arlington County participated with the First Baptist Church of Clarendon to develop real property for the mutual benefit of the County and the Church. We can find no factual allegations that support a claim that the County sought to advance the First Baptist Church's faith, to spread the message of the First Baptist Church, or to become entangled in its religious affairs. Rather, the County's only interest was to accomplish the secular end of having affordable housing constructed in a highly urban area of Arlington County. To the extent that the Church and the County pursued their own goals through a secular corporation, they surely have interacted and will continue to interact with each other. We have observed, however, "[k]eeping religion and State distinct, while at the same time protecting the freedom of the people to act fully in both arenas, requires the State to recognize and even interact with religion." *Ehlers-Renzi*, 224 F.3d at 292. The interaction presented in this case does not support a plausible claim that the County acted so as to make a law establishing religion.

The judgment of the district court is accordingly affirmed.

*AFFIRMED*