704 S.W.2d 219 (1986)
STATE ex rel. MISSOURI STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent,
v.
Cheryl Lynn SOUTHWORTH, Appellant.
No. 66799.
Supreme Court of Missouri, En Banc.
February 18, 1986.
*221 Michael A. Wolff, St. Louis, Martin Mazzei, Steelville, for appellant.
David Brydon, Vicki J. Goldammer, Hawkins, Brydon & Swearengen, P.C., Jefferson City, for respondent.
RENDLEN, Judge.
Respondent Missouri State Board of Registration for the Healing Arts (Board) pursuant to § 334.230, RSMo Cum.Supp.1984, brought suit to enjoin appellant from engaging in the unauthorized practice of medicine or midwifery in violation of § 334.010, RSMo 1978. Subsequent to issuance of a temporary restraining order the case was heard and the trial court, finding that appellant was engaged in the unauthorized practice of medicine and midwifery, issued its permanent injunction. This appeal followed. Because the validity of a statute is in issue, the cause falls within the exclusive appellate jurisdiction of this Court. Mo. Const. art. V, § 3.
Appellant by her own testimony is a midwife. She testified that she "assist[s] people in the birth of their children if they are having births at home, and sometimes that includes midwifery." She is a member of the Missouri Midwife Association, lists midwifery as her self-employed occupation on her income tax return and has signed her name, with a registration number, to birth certificates as a midwife. At the time of hearing appellant had "assist[ed] women who are having babies" for 11½ years. She had lived in Missouri for the last two years and during each of the two years prior to the hearing had assisted approximately seventeen women in childbirth.
The trial court findings, supported by the record, establish that in the course of acting as a midwife appellant conducted: internal (by hand) and external examinations of the vagina; blood pressure examinations; examinations for fluid retention, including ankle and leg[1] examinations; examinations of urine specimens; and visual examinations of pregnant women. She took pelvic measurements by sight, recorded medical histories, monitored fetal heartbeats, and sutured lacerations. While acting as a midwife appellant used a blood pressure cuff, stethoscope, surgical gloves, speculum, mistletoe, African red pepper (cayenne), infant bulb syringe, alfalfa pills, sutures and needles, and test strips for sugar. Appellant advised pregnant women about their diet and recommended that they take vitamins.
Appellant testified that her services also included child care, housekeeping, helping the woman to the hospital if necessary, and providing encouragement and moral support. Further, appellant is not licensed as a midwife,[2] physician, registered nurse, or practical nurse in Missouri or any other state, though her standard charge for services is four hundred dollars. While this is negotiable, she offers her services free when a family cannot afford to pay her and sometimes payment is by goods or services in lieu of cash.
Appellant further testified that she does not have an office, does not have a telephone listing as a midwife, and does not advertise. She recommends to the women that she assists that they go to a doctor *222 during the prenatal period. Appellant generally does not give intravenous injections, though she did so at least once prior to issuance of the temporary restraining order. During her two years of childbirth assistance in Missouri only two women experienced serious complications and in both instances she helped them to the hospital.
Upon its conclusion that appellant had engaged in the unauthorized practice of medicine and midwifery the trial court entered its judgment providing in part as follows:
Cheryl Lynn Southworth is hereby permanently enjoined from engaging in any fashion in the unauthorized practice of medicine or midwifery in the State of Missouri. Specifically, defendant, Cheryl Lynn Southworth, shall not conduct the following examinations or procedures, nor provide, conduct or do the following acts:
A. Dispensing, prescribing or administering any medication or drugs;
B. Internal (by hand) and external examinations of the vagina;
C. Blood pressure examinations;
D. Pelvic measurements by sight;
E. Examinations for fluid retention, including ankle and leg examinations;
F. Examinations of urine specimens;
G. Taking and recording medical histories;
H. Monitoring fetal heart beats;
I. Visual examinations of pregnant women;
J. Blood strip tests;
K. Signing birth certificates as a midwife with a given registration number;
L. Suturing lacerations;
M. Prenatal care for pregnant women; and
N. Deliver or assist in the delivery of any human child or fetus.
Section 334.010, RSMo 1978, provides:

It shall be unlawful for any person not now a registered physician within the meaning of the law to practice medicine or surgery in any of its departments, or to profess to cure and attempt to treat the sick and others afflicted with bodily or mental infirmities, or engage in the practice of midwifery in this state, except as herein provided. (Emphasis added.)
Seeking reversal appellant contends: (1) § 334.010 is unconstitutionally vague; (2) she is not engaged in the practice of midwifery as a profession; (3) there was no evidence of harm to any person or the public generally; and (4) the injunction exceeds the scope of § 334.010.

I.
First appellant maintains that § 334.010 is unconstitutionally vague and uncertain in violation of her due process rights, Mo. Const. art. I, § 10, U.S. Const. amend. XIV, in that the statute makes it unlawful, except as otherwise provided, for any person other than a registered physician to "practice medicine" or to "engage in the practice of midwifery" without defining either phrase. Appellant stresses the importance for a statute to precisely define the prohibited conduct where such fundamental constitutional interests as right of privacy, marriage, procreation, childbirth, childbearing, and family relations are involved.[3]
*223 This Court, in State v. Young, 695 S.W.2d 882, 884 (Mo. banc 1985), stated recently that:
Vagueness, as a due process violation, takes two forms. One is the lack of notice given a potential offender because the statute is so unclear that "men of common intelligence must necessarily guess at its meaning." [Citations omitted.] The second is that the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application.
The "void for vagueness" doctrine is applicable to civil as well as criminal cases. Boutilier v. Immigration & Naturalization Service, 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967) (where exaction of obedience to rule or standard is so vague and indefinite as really to be no rule or standard at all); Ferguson Police Officers Association v. City of Ferguson, 670 S.W.2d 921, 927 (Mo.App.1984). A statute is presumed constitutional and will not be held otherwise unless it clearly contravenes a constitutional provision. Young, 695 S.W.2d at 883.
Tested by these principles the phrases "practice medicine" and "engage in the practice of midwifery" are not so imprecise and uncertain as to render § 334.010 void for vagueness. "If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirement as to definiteness and certainty." Prokopf v. Whaley, 592 S.W.2d 819, 824 (Mo. banc 1980).
We have previously held, in State v. Errington, 355 S.W.2d 952, 956 (Mo. banc), appeal dismissed for want of a substantial federal question, 371 U.S. 3, 83 S.Ct. 27, 9 L.Ed.2d 48 (1962), that the phrase "practice of medicine" is not unconstitutionally vague, stating:
[T]he "practice of medicine," [is] a term of common understanding and meaning and universally accepted to include, although not necessarily limited to, the acts of one publicly representing himself to be trained in the treatment and cure of ills of the human body and purporting for a fee to diagnose bodily ills and effectuate a cure or an alleviation thereof.
Likewise the words "practice of midwifery" are words of common usage, understandable by persons of normal intelligence. Appellant herself testified that the term "midwife" means "a woman assisting a woman at childbirth." Her definition is almost identical to that of Black's Law Dictionary 895 (5th ed. 1979), wherein midwife is defined as "[a] woman who assists at childbirth; an accoucheuse." Similarly the relevant definition of "midwifery," found in Webster's Third New International Dictionary 1432 (1981), is "the art or act of assisting at childbirth; also: OBSTETRICS." Similarly the word "practice," *224 as used in § 334.010, is one of common usage. Its relevant meaning is "the exercise of a profession or occupation." Webster's Third New International Dictionary 1780 (1981). It is defined in Black's Law Dictionary 1055 (5th ed. 1979) in relevant part as: "Repeated or customary action; habitual performance; a succession of acts of similar kind; custom; usage. Application of science to the wants of men. The exercise of any profession." These definitions are those commonly attributed to these words. Suffice it to say that "practice of midwifery" is commonly understood to include the exercise of, as a profession or occupation, the art or act of assisting at childbirth.
Section 334.010 is not void for vagueness on account of its failure to expressly define "practice medicine" or "engage in the practice of midwifery." Persons of ordinary intelligence need not guess at the statute's meaning and the statute affords sufficient guidance to those who must apply it.

II.
Appellant next invites this Court to consider § 334.010, through an examination of its historical development, as prohibiting only midwifery which is practiced as a profession. While acknowledging she is a "lay" midwife, appellant maintains that she is not engaged in the practice of midwifery as a profession.
We decline to engraft onto the statute the added phrase "as a profession" merely because a prior statutory scheme permitted the unlicensed practice of midwifery by women who did not practice it as a profession.[4] The first rule of statutory construction is to give effect to the intent of the legislature. State v. Burnau, 642 S.W.2d 621, 623 (Mo. banc 1982). While it is proper to consider history of legislation where ambiguity exists, Kieffer v. Kieffer, 590 S.W.2d 915, 918 (Mo. banc 1979), we find no ambiguity here. Words used in a statute must be accorded their plain and ordinary meaning. Burnau, 642 S.W.2d at 623. The plain language of § 334.010 is that the statute is triggered if a person is engaged "in the practice of midwifery." Where the language of a statute is plain and admits of but one meaning, there is no room for construction. L & R Distributing Co. v. Missouri Department of Revenue, 648 S.W.2d 91, 95 (Mo.1983). We must construe the statute as it stands, England v. Eckley, 330 S.W.2d 738, 744 (Mo. banc 1959), and give effect to it as written. State v. Patton, 308 S.W.2d 641, 644 (Mo. banc 1958). To engraft the phrase "as a profession" onto the statute would be to disregard the maxim of statutory construction that the legislative intent *225 insofar as possible is to be determined from the language of the statute itself. State v. Sweeney, 701 S.W.2d 420, 422-23 (Mo. banc 1985). Looking for a moment at the history of the statute, the phrase "as a profession" was deleted in 1959 and this leads to the conclusion that the legislature no longer intended it to be a part of the statute. If we were to now judicially tack the phrase back onto the statute then the deletion of the phrase would have been a useless act. Legislative changes should not be construed as useless acts unless no other conclusion is possible. Kilbane v. Director of Department of Revenue, 544 S.W.2d 9, 11 (Mo. banc 1976).
While this Court will not engraft the words "as a profession" onto the statute, the phrase "engage in the practice of midwifery" broadly includes those who practice midwifery as a profession as well as those merely pursuing it as an occupation.
We further recognize that under § 334.010 every act of midwifery engaged in without a license is not unlawful. Rather, engaging in the practice of midwifery without a license is unlawful. Each "word, clause, sentence and section" of a statute should be given meaning. Brown Group, Inc. v. Administrative Hearing Commission, 649 S.W.2d 874, 881 (Mo. banc 1983). If the legislature intended to prohibit every act of midwifery it simply would have prohibited one from engaging in "midwifery" rather than "the practice of midwifery." Thus § 334.010 does not prohibit all such acts, but instead permits isolated or occasional gratuitous acts of midwifery. See also § 334.150, RSMo 1978.[5]
Giving effect to the plain language of § 334.010, we conclude the trial court properly found that appellant has engaged in the unauthorized practice of midwifery in Missouri. She concedes to acting as a midwife, and that she is not licensed so to do. The evidence demonstrates she engaged in the exercise of the art or act of assisting at childbirth at least as an occupation, and probably too as a profession. The relevant definition of "occupation," found in Webster's Third New International Dictionary 1560 (1981), is "the principal business of one's life: a craft, trade, profession or other means of earning a living: EMPLOYMENT, VOCATION." See also Lynn v. Business Men's Assur. Co. of America, 232 Mo.App. 842, 111 S.W.2d 231, 236 (1937) ("occupation" means "that which occupies time and attention, a calling, or a trade"). One definition of "profession" is "a principal calling, vocation, or employment." Webster's Third New International Dictionary 1811 (1981). It cannot be said that she is not engaged in the practice of midwifery simply because she does not have an office, does not advertise, and does not habitually earn her living from midwifery. Certainly she holds herself out as a midwife, often accepts payment for her services and lists midwifery as her self-employed occupation on her income tax return.

III.
Appellant next contends that the injunction is inappropriate under § 334.230, RSMo.Cum.Supp.1984, because there is no evidence that any person or the public generally would be harmed in absence of the injunction.
Section 334.230, as amended in 1981, provides in pertinent part:
1. Upon application by the board, and the necessary burden having been met, a court of general jurisdiction may grant an injunction, restraining order or other order as may be appropriate to enjoin a person from:
(1) Offering to engage or engaging in the performance of any acts or practices for which a certificate of registration or authority, permit or license is required by this chapter upon a showing that such acts or practices were performed *226 or offered to be performed without a certificate of registration or authority, permit or license; or
(2) Engaging in any practice or business authorized by a certificate of registration or authority, permit or license issued pursuant to this chapter upon a showing that the holder presents a substantial probability of serious danger to the health, safety or welfare of any resident of the state or client or patient of the licensee. (Emphasis added.)
The "necessary burden" to be met by the Board in this instance is provided in § 334.230.1(1) relating to acts and practices of unlicensed persons. The Board must make "a showing that such acts or practices were performed or offered to be performed without a certificate of registration or authority, permit or license." Id. As previously discussed appellant engaged in the practice of midwifery and she does not directly challenge the trial court's finding that she was engaged in the practice of medicine. Further, appellant admits that she is not licensed to so practice. The burden was met and injunction appropriate.
Appellant relies on the fact that § 334.230, RSMo 1978, prior to amendment, specifically provided in pertinent part:
The pleadings, practice and procedure in such action shall be in accordance with the law of this state governing injunctions generally, except that the injunction may be issued without proof of actual damage sustained by any person or proof that any person will sustain damage if the injunction is not granted. (Emphasis added.)
She then relies on the fact that § 334.230, as amended, fails to include the above except clause. Appellant contends that "necessary burden" presumably refers to that general burden previously excepted out. We disagree. From a plain reading of the statute "necessary burden" refers to the required showings set forth in § 334.230.1(1), (2). Section 334.230 requires that the "necessary burden" be met, § 334.230.1(1) explicitly sets forth the relevant "necessary burden," and the Board met that burden.

IV.
Finally, appellant maintains the injunction is overly broad and exceeds the scope of § 334.010. While we agree in part with this argument, the injunction need not be narrowed to the extent appellant contends.[6]
It is enough for the trial court to simply enjoin appellant "from engaging in any fashion in the unauthorized practice of medicine or midwifery in the State of Missouri." It was perhaps excessive, in paragraphs "A" through "N" of its judgment, for the trial court to enumerate specific examinations, procedures and acts that appellant was not to conduct, where literally applied the judgment prohibits the enumerated acts under any circumstance. While the specified acts are prohibited if conducted while engaging in the practice of medicine or midwifery, we cannot say that they are prohibited in every instance. See, e.g., § 334.150. Appellant should not misinterpret the narrowing of the injunction as permitting the acts. Rather we direct the trial court to simply permanently enjoin appellant "from engaging in any fashion in the unauthorized practice of medicine or midwifery in the State of Missouri," and appellant should understand that acts such as those which had been enumerated are barred by that general language if conducted while engaging in the practice of medicine or midwifery.
The cause is remanded with directions for the trial court to modify its judgment enjoining appellant consistent with the views expressed herein.
All concur.
NOTES
[1] The record supports a finding that appellant conducted examinations for fluid retention, including ankle and foot examinations.
[2] Section 334.010, RSMo 1978, provides that "[i]t shall be unlawful for any person not now a registered physician within the meaning of the law to ... engage in the practice of midwifery in this state, except as herein provided" (emphasis added). There are no longer any provisions for the licensing of midwives, except that § 334.260, RSMo 1978, provides: "On August 29, 1959, all persons licensed under the provisions of chapter 334, RSMo 1949, as midwives shall be deemed to be licensed as midwives under this chapter and subject to all the provisions of this chapter." Additionally, the provisions of Chapter 334, and thus § 334.010, do not apply to specified professions, including "nurses licensed and lawfully practicing their profession within the provisions of chapter 335, RSMo." Section 334.155, RSMo.Cum.Supp.1984. See Sermchief v. Gonzales, 660 S.W.2d 683 (Mo. banc 1983).
[3] Appellant raises the issue of the infringement of these alleged fundamental rights in this vagueness context. We note, however, that she does not preserve for our review the specific question of whether § 334.010, RSMo 1978, by prohibiting the unauthorized practice of midwifery, is unconstitutional for the very reason that it violates any of these constitutional rights. None of appellant's "Points Relied On" raise such contention, although it was suggested at the trial court level and is mentioned in the "Jurisdictional Statement" of her brief. "Contentions not presented in the points to be argued in an appellate brief are abandoned and will not be considered." Hastings v. Coppage, 411 S.W.2d 232, 235 (Mo.1967). But because of the overriding importance of the question to a comprehensive review of the constitutionality of § 334.010, we note the relevant observations of the Supreme Court of California in Bowland v. Mun. Court for Santa Cruz County Judicial Dist., 18 Cal.3d 479, 556 P.2d 1081, 1089, 134 Cal.Rptr. 630, 638 (1976):

For the same policy reasons for which the Legislature may prohibit the abortion of unborn children who have reached the point of viability, it may require that those who assist in childbirth have valid licenses. Its interest in regulating the qualifications of those who hold themselves out as childbirth attenders is an equally strong one, for manywomen must necessarily rely on those with qualifications which they cannot personally verify. Nor is the state's interest in requiring a license diminished by the fact that childbirth with assistance, even the assistance of an unlicensed person, may be safer than self-delivery. The state need not prohibit the most unlikely of circumstanceschildbirth without assistancein order to justify regulating the much more common eventassistance of the mother at childbirth. In the area of public welfare, the Legislature need not attack every social problem at once. [Citations omitted.] Plaintiff's further arguments as to the safety of home deliveries are more properly addressed to the Legislature than to the courts....
For the same reasons we believe the legislature may choose not to provide for the licensing of midwives and thereby make it "unlawful for any person not now a registered physician ... [to] engage in the practice of midwifery" except as otherwise provided. Section 334.010. In so concluding we do not judge the merits of midwifery but acknowledge that those allowed to engage in the practice is an issue spoken to by the legislature.
[4] Section 9993, RSMo 1939, provided:

It shall be unlawful for any person to practice midwifery in this state before receiving a license to do so. Every person desiring to practice midwifery as a profession shall make application to the state board of health for examination and pay a fee of five dollars. And upon passing an examination satisfactory to said board upon the subject of obstetrics, shall receive a license to practice as above provided. It shall be unlawful for any person licensed as a midwife only to engage in any other branch of medical practice or to advertise herself as doctor, doctress or physician, or to use any letters before or after her name on a sign or otherwise, indicating that she is authorized to or does engage in any other branch of medical practice. And any person practicing midwifery as a profession or advertising herself as a midwife, without first obtaining the license aforesaid, and any licensed midwife who shall do any acts in this section prohibited, shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than ten dollars nor more than fifty dollars, or by imprisonment in the county jail not more than two months nor less than ten days. Acting in each case shall be deemed a separate offense. Nothing in this section shall be so construed as to require women practicing midwifery to obtain a license when said women do not practice midwifery as a profession, and do not make any charge for their services. (Emphasis added.)
Sections 334.190 and 334.220, RSMo 1949, both having § 9993 as a source, continued to relate to "midwifery as a profession" though the last sentence of § 9993 had been deleted. Section 334.220 was repealed in 1959. Section 334.190 was amended in 1959, deleting what were the first three sentences of § 9993. See § 334.190, RSMo 1978. Currently no provisions of Chapter 334 expressly limit their application to midwifery practiced "as a profession."
[5] Section 334.150, RSMo 1978 provides in pertinent part that "[i]t is not intended by sections 334.010 to 334.140 to prohibit isolated or occasional gratuitous service to and treatment of the afflicted."
[6] Appellant seeks an injunction no broader than the temporary restraining order, which merely ordered appellant to "absolutely desist and refrain from engaging in the unauthorized practice of medicine in the State of Missouri; including but not limited to the prescribing or injection of ethical drugs or controlled substances as defined in Section 195.010 RSMo, 1978."