SAINT LOUIS UNIVERSITY, Respondent,

v.

The MASONIC TEMPLE ASSOCIATION OF ST. LOUIS, et al., Appellants.

No. SC 88075.

Supreme Court of Missouri, En Banc.

April 17, 2007.

Rehearing Denied May 29, 2007.

James A. Stemmler, St. Louis, for Appellants.

Richard B. Walsh, Jr., Winthrop B. Reed, III, Stephen M. Durbin, Mark E. Lawson, Associate City Counselor, St. Louis, Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Asst. Atty. Gen., Jefferson City, for Respondent.

Anthony E. Rothert, St. Louis, Amicus Curiae for American Civil Liberties Union of Eastern Missouri.

Lauren R. Rexroat, Proskauer Rose LLP, Ayesha N. Kahan, Alex J. Luchenister, Heather L. Weaver, Washington, D.C., Amicus Curiae for Americans United for Separation of Church and State.

Timothy Belz, St. Louis, Carl H. Esbeck, University of Missouri–School of Law, Columbia, Amicus Curiae for Center for Law & Religious Freedom.

MARY R. RUSSELL, Judge.

The Masonic Temple Association [1] appeals after the trial court found three City of St. Louis tax increment financing ("TIF") ordinances constitutional.[2] The trial court granted summary judgment in favor of Saint Louis University ("SLU")

---

1. The Masonic Temple Association and it co-defendants are collectively referred to in this opinion as "Masonic."

2. TIF is outlined in sections 99.800 to 99.865, RSMo 2000 (and, where amended, RSMo

Supp.2006). A thorough explanation of the TIF statutes can be found in *Tax Increment Financing Commission of Kansas City v. J.E. Dunn Construction Co., Inc.,* 781 S.W.2d 70, 73 (Mo. banc 1989).

and the City of St. Louis, ultimately finding that SLU was eligible for TIF monies. The trial court did not err in finding that SLU is not controlled by a religious creed and, accordingly, the TIF ordinances are constitutional.

## Facts

SLU is a benevolent corporation that operates a nationally-recognized higher education institution in the City of St. Louis. SLU grew out of the St. Louis Academy founded by the Society of Jesus ("the Jesuits") in 1818 and was incorporated by an act of the Missouri General Assembly in 1832. SLU currently serves 11,000 students and has approximately 127 buildings and 217 acres. Pursuant to SLU's bylaws, it is run by a president, who is a Jesuit.[3] The president has the "general and active management, control and direction of the business operations, educational activities and other affairs of the University." Under the bylaws, the president is an ex-officio voting member of SLU's Board of Trustees, the group tasked with the operation and control of the university. The Board of Trustees is an independent, lay board of trustees and conducts its business by majority vote. All SLU officers, including the president, serve at the pleasure of the Trustees.

Under SLU's bylaws, which can be amended by the Trustees, the Trustees number between 25 to 55 members, and no fewer than six nor more than 12 of those members must be Jesuits. At the time relevant to this case, there were 42 trustees, with nine being Jesuits. Trustees include non-Catholics and persons unaffiliated with a religion.

SLU's current president, Jesuit Lawrence Biondi, attested that SLU is not owned or controlled by the Roman Catholic Church, the Archdiocese of St. Louis, or any other church. President Biondi further attested that SLU has a tradition that aspires to Jesuit philosophies and ideals, but in no way requires that employees or students aspire to those ideals. SLU students and faculty are not required to have any specific religious affiliation. Fewer than 35 of SLU's 1275 faculty and staff members are Jesuits. Less than half of SLU's students identify themselves as Catholics.

## Procedural Background

This case arose after SLU sought TIF financing[4] from the City when it began planning construction of a 13,000 seat arena for use for sporting events, graduation ceremonies, and other secular uses benefiting SLU students and the community. President Biondi stated that SLU's arena project was initiated in order to continue to participate in the redevelopment of the City and to provide improvements to SLU students. The City enacted ordinances to establish TIF assistance for the SLU redevelopment project.[5] The ordinances en-

---

3. Although SLU's president at the time of this action is a Jesuit, SLU's bylaws have recently been amended so that its president need not be a Jesuit.

4. Specifically, it sought to use Missouri state increment financing under the Real Property Tax Increment Allocation Redevelopment Act in sections 99.800 to 99.865, RSMo 2000 (and, where amended, RSMo Supp.2006), which is intended to encourage urban renew-

al by redeveloping blighted areas with tax abatements.

5. The ordinances at issue include: (1) Ordinance 65703, providing that all reasonable or necessary costs incurred in redevelopment will be paid by tax increment revenues generated within the redevelopment area; (2) Ordinance 65857, approving a TIF redevelopment agreement for the Grand Center redevelopment area that includes the SLU arena area; (3) Ordinance 65858, prescribing the form

able the City to pledge tax increment revenues to a special account established for particular redevelopment areas, including SLU. The tax increment revenues and payments in lieu of taxes, paid by landowners in the TIF redevelopment district, will be funneled to the developer to pay development costs.

Masonic first sought to have these ordinances declared unconstitutional in federal court, but its federal case was later dismissed without prejudice upon motion of the defendants. In response to Masonic's litigation, SLU sought declaratory relief from the circuit court seeking to uphold the ordinances. SLU argued that the ordinances were constitutional and that there was no violation of the Missouri Constitution's establishment clause, procedural due process clause, equal protection clause, contract clause, inalienability of the power to tax clause, or Missouri's "Sunshine Laws." Masonic counterclaimed against SLU and the City in an effort to have the ordinances invalidated under these provisions of Missouri's Constitution and under the federal establishment clause.[6]

SLU and Masonic each sought summary judgment and moved to dismiss. The trial court granted summary judgment for SLU, finding that the ordinances were constitutional. Masonic appealed the portions of the judgment finding the ordinances constitutional under Missouri's establishment clause (Mo. Const. art. IX, section 8 and Mo. Const. art. I, section 7) and the federal establishment clause.

## Jurisdiction

This case was transferred to this Court by the court of appeals, as the case presents issues of general interest and impor-

tance. This Court has jurisdiction pursuant to Mo. Const. art. V, section 10.

## Standards of Review

■ Appellate review of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 376–81.

■ This Court recognizes the long-established principle of constitutional construction that Missouri's constitution is not a grant of legislative power, but, except for its restrictions, legislative power is unlimited and practically absolute. *Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 77 (Mo. banc 1979). Masonic bears the burden to demonstrate that the ordinances at issue are unconstitutional. *Id.* The ordinances at issue are presumed constitutional and will not be found otherwise unless they clearly contravene a constitutional provision. *State ex*

and details of payment for the Grand Center redevelopment.

6. The federal establishment clause is found in the First Amendment of the United States Constitution. Masonic's counterclaims also alleged a violation of 42 U.S.C. section 1983.

*rel. Mo. State Bd. of Registration for Healing Arts v. Southworth,* 704 S.W.2d 219, 223 (Mo. banc 1986). Constitutional construction is not required if the words at issue are plain and unambiguous. *Concerned Parents v. Caruthersville Sch. Dist. 18,* 548 S.W.2d 554, 559 (Mo. banc 1977). When construing a constitutional provision, however, words are to be taken in accord with their fair intendment and their natural and ordinary meaning, which can be determined by consulting dictionary definitions. *Id.*

### No Violation of Missouri's Establishment Clause

 Masonic raises multiple arguments that the trial court erred in granting SLU summary judgment because the challenged TIF ordinances violate Missouri's establishment clause. Masonic alleges that the ordinances constitute financial aid to a university under the control of a religious doctrine or creed in violation of Mo. Const. art. I, section 7 ("[N]o money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination or religion ....") and Mo. Const. art. IX, section 8, stating:

Neither the general assembly, nor any county, city, town, township, school district or other municipal corporation, shall ever make an appropriation or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose, or to help to support or sustain any private or public school, academy, seminary, college, university, or other institution of learning controlled by any religious creed, church or sectarian denomination whatever; nor shall any grant or donation of personal property or real estate ever be made by the state, or any county, city, town, or other municipal corporation, for any religious creed, church, or sectarian purpose whatever.

Nothing in the Missouri Constitution defines "creed," but the dictionary definition of "creed" includes:

**1:** a brief authoritative doctrinal formula ... intended to define what is held by a Christian congregation, synod, or church to be true and essential and exclude what is held to be false belief ... **3 a:** a formulation or system of religious faith ... **b:** a religion or religious sect ... **c:** a formulation or epitome of principles, rules, opinions, and precepts formally expressed and seriously viewed as so expressed or adhered to....

Webster's New Int'l Dictionary 533 (Unabridged 3d ed.1993).

Masonic's argument raises the question of whether SLU is a university "controlled by [a] religious creed, church, or sectarian denomination" under Mo. Const. art. IX, section 8. It asserts that SLU's devotion to a religious "creed" is shown in that its bylaws commit to the intellectual and spiritual ideals of the Jesuits. Masonic alleges that SLU's affiliation with the Jesuit religious order suggests that it is under the direction of the Jesuits.

The university is not a religious institution simply because it is affiliated with the Jesuits or the Roman Catholic Church. *See, e.g., Bradfield v. Roberts,* 175 U.S. 291, 298, 20 S.Ct. 121, 44 L.Ed. 168 (1899) (secular hospital corporation not a religious institution simply because members are part of order of Roman Catholic Church). A key question is whether religion so pervades the atmosphere of the university that it is in essence under religious control or directed by a religious denomination. *See, e.g., College of New Rochelle v. Nyquist,* 37 A.D.2d 461, 326 N.Y.S.2d 765, 771–72 (N.Y.App.Div.1971) (construing a constitutional provision similar to Missouri's and determining that a university under Catholic auspices and ad-

ministered by nuns was not so pervaded by religion as to violate New York's constitution).

▉▉▉▉ Mere affiliation with a religion does not indicate that a higher education institution is "controlled by a religious creed" for purposes of Missouri's establishment clause. "Control by a religious creed" suggests that that the religious component dictates the institution's administration and oversight. *See id.* "Control by religious creed" is likely to include a religious doctrine as the core decision-making model for the university and will also be marked by efforts to indoctrinate the faith or support a particular religious denomination. "Control by a religious creed" is not shown simply by a historical link to a particular religion or by devotion to the ideals of a sect. A university's motivation or aspiration to follow certain teachings does not indicate that it is "controlled by a religious creed" such that religion dictates the corporate management of the university. Appreciation for the ideals and ideas of a religious order do not show a university is "controlled" by that religion without a showing that adherence to those teachings directs the administration and operation of the institution.

Masonic's religious creed arguments are not persuasive. Masonic makes much of the fact that SLU's president is a Jesuit, but nothing in Missouri's constitution disqualifies aid to a university headed by a member of a religious order. The focus is whether the school itself, not the person in charge of it, is controlled by a religious creed. SLU's president exercises restricted control over the university, as he serves at the pleasure of an independent, lay Board of Trustees and is bound by the Trustees' decisions. Support for SLU's arguments that it is not controlled by a religious sect is shown by the fact that it is controlled and operated by this independent, lay Board of Trustees. *See, e.g., Americans United v. Rogers,* 538 S.W.2d 711, 721 (Mo. banc 1976) (mentioning significance of independent governance in declaring constitutional a college financial assistance program in which funds were allowed to be used at private institutions, expressing that schools with independent boards are not under the "control" prohibited by Mo. Const. art. IX, section 8). At the time of this action only nine of the 42 SLU Trustees were Jesuits, and these nine Jesuits do not have the authority to act without the agreement of a majority vote taken from among a majority of Trustees.

Masonic also argues that SLU's control by a religious creed is indicated by its bylaws, under which the Trustees administer the university. Article I of SLU's bylaws states:

[SLU] is a corporation organized for educational purposes. . . .

The primary corporate purposes of the University, expressed in its charter, are the encouragement of learning and the extension of the means of education. . . . The University . . . recognize[s] and accept[s] three primary responsibilities: that of teaching; that of research; and that of community service.

[SLU] has been operated and governed by [Jesuits] and enjoys a long, rich history and tradition as a Catholic university and as a Jesuit university. Its trustees acknowledge . . . the University's operations will be conducted, in harmony with this history and tradition, and that:

a. The University will be publicly identified as a Catholic university and as a Jesuit university.

b. The University will be motivated by the moral, spiritual and religious inspiration and values of the Judeo–Christian tradition.

c. The University will be guided by the spiritual and intellectual ideals of the [Jesuits].

d. The University, through the fulfillment of its corporate purposes, by teaching, research and community service, is, and will be, dedicated to the education of men and women, to the greater glory of God, and to the temporal and eternal well being of all men and women.

SLU's bylaws do not demonstrate that SLU is under the control of a religious creed. The bylaws show a motivation to act under Jesuit or Catholic ideals or beliefs, but aspiration to ideals does not equate to the kind of control of a university's operation or management that is proscribed by Missouri's establishment clause. There was no allegation that SLU's Jesuit roots and appreciation for Jesuit philosophies demonstrably control campus life, and SLU respects academic freedom and inquiry that runs counter to Catholic teachings.

Masonic also argues that SLU's religious control is demonstrated in its mission statement, which includes references to "the greater glory of God," "God's creation," "spirit of the Gospels," and a statement that: "As a Catholic, Jesuit university, [SLU's mission] is motivated by the inspiration and values of the Judeo–Christian tradition and is guided by the spiritual and intellectual ideals of the [Jesuits]."

President Biondi testified:

[O]ur philosophy is basically to teach young men and women to be good citizens, to follow their Judeo–Christian conscience, to become leaders in their society after they graduate, to take the kinds of things that they have learned . . . and to live them out in their society to make changes in their workplace and to improve [their] society.

This statement and the bylaws statement that "[t]he primary corporate purposes of the University . . . are the encouragement of learning and the extension of the means of education" demonstrate that SLU's mission is education, not indoctrination, and its focus is on development of students, not on the propagation of the Jesuits' faith. References to religion in the aspirational comments of SLU's guiding documents do not demonstrate that SLU is "controlled by a religious creed" for purposes of Mo. Const. art. IX, section 8.

## The Challenged Ordinances Are Constitutional

SLU's proposed sports arena is intended to redevelop a blighted area of the City and provide an avenue for secular student and community events; its purpose is not to advance religion. Masonic argues, however, that consideration of the arena's secular purpose is inappropriate because the plain language of Missouri's establishment clause prevents disbursement of public funds to a religiously controlled institution, regardless of purpose. This issue need not be scrutinized because this Court has already determined that SLU is not controlled by a religious creed or sectarian denomination and, as such, Missouri's establishment clause does not render unconstitutional the challenged ordinances that allow SLU to partner in the City's redevelopment.

## No Federal Establishment Clause Violation

To the extent that Masonic argues that the challenged TIF ordinances violate the federal establishment clause, Masonic's arguments are without merit.

Masonic urges this Court to consider the federal establishment clause test set forth in *Lemon v. Kurtzman,* 403 U.S.

602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), but there is no violation of the *Lemon* test [7] in this case.

Masonic's arguments that the challenged ordinances present a violation of *Hunt v. McNair*, 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973), are also unpersuasive. *Hunt* elaborated on the excessive entanglement prong outlined in *Lemon,* stating:

> Aid normally may be thought to have a primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission or when it funds a specifically religious activity in an otherwise substantially secular setting.

*Hunt,* 413 U.S. at 743, 93 S.Ct. 2868.

This opinion has already rejected Masonic's arguments that religion is so pervasive at SLU such that it could be an institution excluded by *Hunt.* Masonic's arguments regarding *Hunt* do not merit further discussion.

██ Missouri's establishment clause is more restrictive than the federal provision. *Ams. United v. Rogers,* 538 S.W.2d 711, 720 (Mo. banc 1976) ("constitution of Missouri, as construed by this court, is more 'restrictive' than the First Amendment to the United States Constitution in prohibiting expenditures of public funds in a manner tending to erode an absolute separation of church and state"). Having found no violation of Missouri's more restrictive clause, exploration of the federal clause is unnecessary.

### Further Discovery is Unwarranted

██ Masonic's contentions that further discovery is warranted in this case are unpersuasive. Like SLU and the City, Masonic sought a judgment on the pleadings. Masonic did not request a continuance to conduct additional discovery pursuant to Rule 74.04, nor did it express a need for additional discovery prior to the trial court's decision. Remand for further discovery is not merited.

### Conclusion

Masonic has failed to meet its burden of demonstrating the invalidity of the TIF ordinances at issue. SLU was properly granted summary judgment, as there is no genuine issue of material fact and, based on the undisputed facts, it is entitled to judgment as a matter of law because it is not "controlled by a religious creed" in violation of Missouri's establishment clause. The trial court's judgment is affirmed.

STITH, PRICE, LIMBAUGH and WHITE, JJ., and BATES, Sp.J., concur.

TEITELMAN, J., dissents in separate opinion filed.

WOLFF, C.J., not participating.

RICHARD B. TEITELMAN, Judge.

I respectfully dissent. I would reverse the summary judgment and remand for further proceedings so that this Court could render a decision on this important constitutional issue with the benefit of a more fully developed factual record.

This case involves an appeal of a grant of summary judgment in favor of SLU. Therefore, in reviewing the judgment, this Court must draw all factual inferences against SLU. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,*

---

7. *Lemon* establishes that a challenged provision survives the federal Establishment Clause if it has (1) a secular legislative purpose; (2) a primary effect other than the advancement of religion; and (3) no tendency to excessively entangle the State in church affairs. 403 U.S. at 612–13, 91 S.Ct. 2105.

854 S.W.2d 371, 376 (Mo. banc 1993). The majority opinion does not follow this mandate. Instead, the majority identifies a series of facts and draws inferences in favor of SLU even though the inferences drawn are subject to reasonable dispute given the record in this case. This approach is the opposite of what this Court's summary judgment case law requires.

The majority notes the fact that SLU is controlled by an independent board of trustees and that, when suit was filed, only nine of the forty-two SLU trustees were Jesuits. From this fact, the majority infers that SLU is subject to independent, secular governance and is not controlled by a religious creed. However, this inference begs the question as to whether the board, independent as it may be, nonetheless operates a sectarian institution. *Americans United*, 538 S.W.2d 711, 725 (Mo. banc 1976) (Seiler, J., dissenting). This inference is also inconsistent with the manner in which the majority dealt with the fact that SLU is currently led by a Jesuit president.[1] The majority notes that SLU's president is a Jesuit but concludes that the "focus is whether the school itself, not the person in charge of it, is controlled by a religious creed." It is inconsistent to infer that the religious affiliation, or lack thereof, of the board of trustees indicates secular independence while the religious affiliation of SLU's Jesuit president is irrelevant. The personal religious affiliation of university leadership is either relevant or it is not. It would certainly seem that religious affiliation is relevant; therefore, consistency and this Court's summary judgment case law demands that the inferences from such affiliation be drawn against SLU. Consequently, if the fact that a majority of the trustees are not

Jesuits indicates that the university is not controlled by a religious creed, then the fact that SLU's president is a Jesuit indicates the opposite conclusion.

The majority also infers that SLU's bylaws, which provide that the university will be publicly identified as a Catholic and Jesuit university and shall be governed and operated in accordance with that identity, demonstrate only an aspiration to Jesuit ideals and not the kind of control contemplated in Missouri's establishment clause. The majority avoids drawing an inference against SLU by framing the repeated reference to religious ideals in the bylaws as mere "aspirational comments." However, this inference overlooks the fact that the aspirations at issue are those of a particular religious creed. It is precisely those religious aspirations that, according to the language of the bylaws, guide SLU's mission. If these religious aspirations are in practice realized, could this not support a finding that SLU is in reality controlled by a religious creed? The majority avoids this issue by relying heavily on the provision in the bylaws stating that the primary purpose of the university is the "encouragement of learning and the extension of the means of education...." However, the numerous references to the SLU's guiding Jesuit and Catholic religious principles contradicts the inference drawn by the majority that the university is not controlled by a religious creed. The language in the bylaws is not simply a matter of SLU's religious affiliation or tradition; it is a matter of the university's identity and governance. At the summary judgment stage, if the inferences truly were drawn against the SLU as the movant, then there would appear to be a genuine issue as to

[1]. At oral argument, counsel for SLU indicated that the university has always had a Jesuit president.

whether the bylaws indicate that the university is controlled by a religious creed.

If Missouri courts are going to be called upon to distinguish between religious affiliation and control, then the courts should make this sensitive and important decision with the benefit of all of the facts. If the facts are not adequately developed and a summary judgment is affirmed by drawing inferences in favor of the movant instead of against the movant, then the courts of this State run the risk of interjecting problematic concepts into Missouri's establishment clause jurisprudence. The majority opinion does just that.

As discussed above, the majority opinion concludes that the bylaws reflect only religious aspiration and, therefore, that SLU's mission is education and not the indoctrination or propagation of faith. The implication is that the benchmark for proving a violation of Missouri's establishment clause violation is a showing of efforts at indoctrination or propagation of faith. The majority cites no Missouri case law for this proposition and there is no obvious reason why an institution could not be controlled by a religious creed even if proselytism is not a primary purpose. Indeed, not all religious creeds advocate the propagation of the faith or engage in efforts at indoctrination. It is, therefore, entirely possible that an institution can be controlled by a religious creed absent any showing of any effort whatsoever at indoctrination or propagation of the faith. Moreover, even if the religious creed at issue does advocate proselytism, it does not follow that proof of such efforts is required to establish a violation of Missouri's establishment clause. A violation of Missouri's clause can be proven upon a showing of less church-state involvement than is required to establish a violation of the federal establishment clause. Even under the higher quantum of proof required to establish a violation of the federal clause, it is not necessary to show efforts at indoctrination. Therefore, proving a violation of Missouri's establishment clause cannot require a showing of efforts at indoctrination because it requires less of a showing of church-state involvement than is required under the federal clause. If proving a violation of the federal establishment clause does not depend upon a showing of efforts at indoctrination, then it is certain that Missouri's more restrictive clause does not require such a showing.

A genuine issue that will prevent summary judgment exists where the record shows two plausible but contradictory accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary, or frivolous. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. The facts cited by the trial court and now by this Court are not sufficient to support summary judgment. As explained above, there are plausible, contradictory accounts of the essential facts of this case that render inappropriate the summary judgment entered on behalf of SLU. Thus, I agree with Judge Mooney of the Missouri Court of Appeals, Eastern District, who, in his separate opinion concurring with that court's decision to transfer the appeal to this Court, wrote as follows:

> Law is written in black and white, but life is lived in shades of gray. If indeed it were credibly established at trial that Saint Louis University, despite its governing documents, is no longer controlled by the Catholic creed, it might build its arena with public funds. I hope our Supreme Court orders a trial on the merits of that interesting question.

I would reverse and remand for a trial on the merits.