STATE ex rel. PETTIS COUNTY R–XII SCHOOL DISTRICT and Pettis County R–XII School District, Appellant,

v.

Rusty KAHRS, Larry Wilson and Rod Lindemann, Individually and as County Commissioners of the County of Pettis and Marsha Boeschen, Individually and as County Collector of the County of Pettis and Robert Leftwich, Individually and as County Collector of the County of Pettis and Ohio Casualty Insurance Company, as Surety on the Collector's Official Bond for Robert Leftwich as County Collector of the County of Pettis, and Tyson Foods, Inc., Respondents.

No. WD 68700.

Missouri Court of Appeals, Western District.

July 15, 2008.

**86**

Steven Wright, Jefferson City, for appellant.

Bradley Baumgart, Kansas City, Jeff Mittelhauser, Sedalia, for respondents.

Before VICTOR C. HOWARD, Chief Judge, HAROLD L. LOWENSTEIN, Judge and JAMES E. WELSH, Judge.

VICTOR C. HOWARD, Judge.

Plaintiff Pettis County R–XII School District (the District) appeals the grant of summary judgment in favor of the Pettis County Commissioners, the Pettis County Assessor, the Pettis County Collector, the Collector's insurer (together, the Defendants), and third party defendant, Tyson Foods, Inc (Tyson). Due to the County Assessor's error in classifying Tyson's personal property with a long-term depreciation schedule rather than a mid-range depreciation schedule, the Defendants' over-assessed Tyson's personal property tax. Defendants later discovered their error and reissued a corrected tax bill. The District claimed that improper procedures were followed in correcting the bill and brought an action against the Defendants under section 139.300.1 [1] for knowingly evading the collection of a tax.[2] The trial court granted the Defendants' motion for summary judgment and held that the District suffered no damages because it was never entitled to the revenue from the initial erroneous assessment. We affirm;

---

1. Unless otherwise indicated, all citations to statutes refer to RSMo 2000 and all citations to rules refer to Missouri Supreme Court Rules (2008).

2. Section 139.300.1 states:

 Every county clerk, assessor, collector or other officer, who refuses or knowingly neglects to perform any duty enjoined on him by, or consents in or connives at any evasion of the laws relating to the assessment, levy and collection of taxes, whereby any proceedings required by such laws are prevented or hindered, or any property is unlawfully exempted from taxation or is entered upon the tax list at less than its full cash value, is liable for each offense, neglect or refusal, individually and on his official bond, for double the amount of the loss or damage caused thereby.

 While unnecessary to the determination of this appeal, we are not certain whether this statute requires a willful and knowing evasion of the tax laws in the sense that the officer must know that they are evading the tax law when doing such.

the tax bill was corrected under section 137.270.

## Facts and Background

When preparing Tyson's 2003 property tax bill, an employee at the Pettis County Assessor's office erroneously categorized personal property held by Tyson on a long-term depreciation schedule rather than on a mid-range schedule. As a result of the error, the personal property was valued at $16,231,037 rather than the correct $10,075,104. A tax bill, initially for $694,753.36, was issued to Tyson based on the high assessment. The incorrect assessment was entered into the Assessor's books and reported to the County Clerk as required by statute. A Tyson employee discovered the overvaluation and notified the Assessor. The Assessor immediately agreed with Tyson—that an error in assessment had been committed—and altered the assessment entered in its books by using the correct depreciation schedule. The County Collector soon thereafter issued a new tax bill for $431,254.81. Tyson paid $431,254.81 to the county as indicated on the corrected bill.

In September of 2004, the District brought the current action against the County Commissioners, County Assessor, County Collector, in both their official and individual capacities, and the County Collector's insurer for statutory damages and interest under section 139.300.1.[3] The action alleged that the tax bill was never properly corrected and the Defendants knowingly consented to the evasion of laws relating to the assessment and collection of taxes by issuing the second, invalid tax bill. The Defendants filed a third party petition seeking indemnification from Tyson. In February of 2005, Tyson submitted to the Pettis County Commissioners an affidavit

of one of its employees, which established why the original assessment was erroneous and why Tyson was unable to attend the County Board of Equalization meeting to correct the mistake. The Commissioners then issued an order pursuant to section 137.270 indicating that the second tax bill was correct and no further taxes were due. In 2007, the trial court issued summary judgment in favor of the Defendants and Tyson, which noted that the District suffered no damages. Defendants now appeal.

## Jurisdiction

 Prior to an analysis of the merits of the appeal, a brief discussion of the Missouri Court of Appeals' jurisdiction is warranted. "To invoke the supreme court's exclusive jurisdiction, the case must involve (1) the construction (2) of a revenue law (3) of this state." *Two Pershing Square, L.P. v. Boley,* 981 S.W.2d 635, 637–38 (Mo.App. W.D.1998). Taxes imposed by and paid to a county do not involve the construction of a revenue law of the state. *Id.* at 638. To be "[a] revenue law 'of the state,'" the law must be "adopted by the general assembly to impose, amend or abolish a tax or fee on all similarly-situated persons, properties, entities or activities in this state, the proceeds of which are deposited in the state treasury." *Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907, 910 (Mo. banc 1997) (citations omitted). In the instant case, while the Missouri Legislature has promulgated many of the statutes discussed below, the property tax imposed, and upon which this cases is based, is not paid to the state but to the county and is, therefore, not a revenue law of this state. This appeal falls outside of the exclusive

---

**3.** The District did not plead an estoppel or reliance-based theory of relief predicated upon the District's detrimental reliance on the Assessor's certified books.

jurisdiction of the Missouri Supreme Court.

## Standard of Review

We review a granted motion for summary judgment *de novo*. *St. Louis Univ. v. Masonic Temple Ass'n*, 220 S.W.3d 721, 725 (Mo. banc 2007). Summary judgment is appropriate where the moving party has demonstrated a right to judgment as a matter of law upon facts not genuinely disputed. *Id.* We review the record in a light most favorable to the party against whom summary judgment was entered. *Id.*

## Analysis

■ Our decision is guided primarily by our understanding of section 137.270. Under that statute, the County Commission has authority to determine and correct "erroneous assessments." The statute states:

> The county commission of each county may hear and determine allegations of *erroneous assessment* ... at any term of the commission before the taxes are paid, on application of any person who, by affidavit, shows good cause for not having attended the county board of equalization for the purpose of correcting the errors or defects or mistakes.... *Valuations* placed on property by the assessor or the board of equalization shall not be deemed to be erroneous assessments under this section.

§ 137.270 (emphasis added). In the current case, the County Commission determined that the initial tax bill was an erroneous assessment under section 137.270 and indicated that Tyson owed no additional taxes. Even assuming that section 139.300.1 is the correct vehicle to address the irregularities of the current assessment and that the Assessor and Collector

had no authority to reissue the tax bill, any irregularity was cured by the Commission's order. The District does not dispute the fact that Tyson demonstrated, by affidavit, good cause for not attending the county board of equalization for purposes of correcting the initial tax bill. Two issues, therefore, remain for our determination: first, was the mistake in the first bill a "valuation" or an "erroneous assessment" and, second, did the Commission have authority to correct the mistake after Tyson paid the lesser, nominally corrected tax bill.

## Erroneous Assessment or Valuation

The District asserts that the County Commission had no authority to use section 137.270 to correct the initial tax bill because it was an error of "valuation" and not an "erroneous assessment." Section 137.270 permits the County Commission to "hear and determine allegations of erroneous assessment." The statute, however, indicates that "[v]aluations placed on property by the assessor or the board of equalization shall not be deemed to be erroneous assessments under this section." The statute does not, however, define either "erroneous assessment" or "valuation." The question before us is whether the error in using the wrong depreciation schedule was an error of valuation or an erroneous assessment.

While the case law is thin and the statutory context provides little guidance, we view an erroneous assessment as a technical error in assessing taxable property, such as a clerical or mathematical mistake. An assessment is a "[d]etermination of the rate or amount of something, such as a tax or damages [or the] [i]mposition of something, such as a tax or fine, according to an established rate." BLACK'S LAW DICTIONARY 111 (7th ed.1999). For example, if the assessor levies a tax on the same property

twice, makes an error in adding the total amount of personal property, or taxes property not owned by the taxpayer, the error is one of assessment. Alternatively, the word "valuation" seems to connote intrinsic value—an inherently subjective determination involving judgment and discretion. A valuation is an error of judgment in evaluating the worth of particular property. For example, if an assessor determines that taxable business equipment is worth $100,000 rather than its actual worth of $50,000, then the error is one of valuation. *See State ex rel. Gottlieb v. W. Union Tel. Co.*, 165 Mo. 502, 65 S.W. 775, 780 (1901) (difference in opinion as to worth of property owned in the state "is merely a case of overvaluation, and not an erroneous assessment").[4]

■ Essentially, the error here was a technical, non-discretionary error. An employee of the Assessor used the wrong depreciation schedule when calculating the tax owed. " 'Depreciation may refer to either actual loss in value due to deterioration or obsolescence or to the more artificial bookkeeping adjustments made to allocate an item's cost throughout its useful life ... depreciated book value for tax purposes may bear little relation.' " *Hoover v. Par Elec. Contractors, Inc.*, 600 S.W.2d 504, 514 (Mo.App. W.D.1980) (cita-

tion omitted). Here, we discuss depreciation as it refers to "book value" and not the actual deterioration of property, which may lessen its fair market value. The Assessor categorized property as mid-range depreciable property when in fact it was long-term depreciable. From what we can gather from the record, no judgment or discretion was required to determine that the assets were improperly categorized. The error had nothing to do with the appraisal of the property, or its resale value, or income generation, or even its useful life. These facts are not in dispute. Consequently, the error here was not an error of valuation but of assessment.[5]

## Timing of the Commission's Determination of Erroneous Assessment

■ The County Commission's order correcting Tyson's 2003 tax bill and indicating no additional taxes were due was issued in 2005. At that time, Tyson had paid the second, corrected tax bill issued by the County Assessor for $431,254.81 but not the initial, incorrect tax bill for $694,753.36. The District insists that because Tyson paid some portion of taxes for 2003, that the remedy in section 137.270 is unavailable and that "it defies logic to conclude that" the County Commission was authorized to correct Tyson's initial 2003 tax assessment in 2005. The Defendants

4. A previous incarnation of section 137.270 stated:
 The county court of each county may hear and determine allegations of erroneous assessment, or mistakes or defects in descriptions of lands, at any term of said court before the taxes shall be paid, on application of any person or persons who shall, by affidavit, show good cause for not having attended the county board of equalization or court of appeals for the purpose of correcting such errors or defects or mistakes.... Valuations placed on property by the assessor or the board of equalization shall not be deemed to be erroneous assessments under this section.

§ 9197, Missouri Revised Statutes 1899.

5. Additionally, if the broad reading of the word "valuation" was applied as suggested by the District, it is unclear as to what purpose section 137.270 would serve. Furthermore, the provision in section 137.270 that prohibits the County Commission from second guessing the Assessor's judgment and opinion regarding property valuation prevents encroachment upon the Assessor's discretionary duties. The correction of a mechanical misapplication of depreciation schedules does not intrude upon that duty.

and Tyson posit that because the erroneous assessment, which is the subject matter of both the Commission's order and this appeal, was never paid, the Commission was not time barred under section 137.270.

The Commission's order was not time barred. Section 137.270 provides an explicit time limit indicating that the County Commission may correct the tax bill "at any term of the commission before the taxes are paid." Neither our own research nor the parties' briefs cite authority indicating whether the underpayment of a tax bill operates to limit the County Commission's authority under section 137.270. We hold, as a matter of first impression, that it does not. Here, Tyson did not pay the excessive amount originally billed but did pay the lesser amount that the second, corrected bill indicated. Although Tyson paid a portion of the taxes that the District now claims were owed, Tyson did not pay the portion of tax now disputed.[6] Therefore, Tyson has yet to pay "*the* taxes" in question.

Moreover, we see no reason why an erroneous assessment could not be corrected simply because two years had passed from the initial billing. The District claims that to permit the County Commission to correct tax bills in subsequent years would circumvent the ordinary tax dispute procedures of the board of equalization, the State Tax Commission, and the courts. *See* 12 CSR 30–3.010.1–2. The District is correct in noting section 137.270 apparently operates to act as an additional means of appeal; however, the language of the statute compels this limited means for addressing erroneous assessments. The

statute provides an express time limit, and the County Commission is free to correct erroneous assessments "at any term of the commission before the taxes are paid." § 137.270. Here, as indicated above, before the erroneous assessment was paid, the Commission was free to correct the assessment.

### Conclusion

The County Commission corrected the tax bill under section 137.270. The damage element of the District's claim is negated, and, therefore, summary judgment is affirmed.

All concur.

---

**6.** This seems to be the correct reading of the "before the taxes are paid" clause in section 137.270. The clause addresses the situation where the taxpayer would seek a refund from the county for money already paid and that the county may have already disbursed. Presumably, the legislature sought to prevent the situation where a county would be forced to refund money it no longer had.